Citation Nr: 1719221 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 03-11 022 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a disability manifested by bilateral lower extremity pain.

2. Entitlement to service connection for hypertension.

3. Entitlement to service connection for a skin disorder(s).

4. Entitlement to service connection for abdominal aortic aneurysm.

5. Entitlement to service connection for a heart disorder.


ATTORNEY FOR THE BOARD

K. Fitch, Counsel 



INTRODUCTION

The Veteran served on active duty from December 1955 to September 1957.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from April 2002 and June 2003 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

The Veteran was originally scheduled for a videoconference hearing before the Board in September 2004, but he cancelled this hearing in favor of a Travel Board hearing. The record reveals that the Veteran was scheduled for such a hearing on May 19, 2005, but he failed to report and has neither furnished an explanation nor requested another hearing. Thus, the Veteran's hearing request is deemed withdrawn. See 38 C.F.R. § 20.704(d). 

The Board subsequently remanded the case for further development in November 2004, August 2005, January 2010, March 2012, February 2013, September 2013, January 2014, and September 2014. In March 2016, the Board denied entitlement to service connection for cholelithiasis (gallstones). The remaining issues were again remanded for development. The case has since been returned to the Board for appellate review.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The most probative evidence shows that a disability manifesting in bilateral lower extremity pain did not have had its onset in service or within one year of service, nor is such disability causally related to active service or any incident therein, or caused or aggravated by a service-connected disability.

2. The most probative evidence shows that hypertension did not have its onset in service or within one year of service, nor is such disability causally related to active service or any incident therein, or caused or aggravated by a service-connected disability.

3. The most probative evidence shows that the Veteran's current skin disorders did not have their onset in service or within one year of service, nor are such disabilities caused or aggravated by a service-connected disability.

4. The most probative evidence shows that an abdominal aortic aneurysm did not have had its onset in service or within one year of service, nor is such disability causally related to active service or any incident therein, or caused or aggravated by a service-connected disability.

5. The most probative evidence shows that a heart disorder did not have had its onset in service or within one year of service, nor is such disability causally related to active service or any incident therein, or caused or aggravated by a service-connected disability.


CONCLUSIONS OF LAW

1. The criteria for an award of service connection for a disability manifesting in bilateral lower extremity pain have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

2. The criteria for an award of service connection for hypertension have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

3. The criteria for an award of service connection for a skin disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

4. The criteria for an award of service connection for abdominal aortic aneurysm have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

5. The criteria for an award of service connection for a heart disorder have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VCAA.

In letters dated in May 2003, May 2005, January 2010, and February 2011, VA notified the Veteran of: information and evidence necessary to substantiate the claims at issue; information and evidence that VA would seek to provide; and information and evidence that the he was expected to provide. The Veteran was informed of the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Although the Veteran did not receive complete notice prior to the issuance of the initial unfavorable decision, the claims were subsequently readjudicated in a Statement of the Case and several Supplemental Statements of the Case. See Prickett v. Nicholson, 20 Vet. App. 370, 377-78 (2006) (holding that VA cured failure to afford statutory notice to claimant prior to initial rating decision by issuing notification letter after decision and readjudicating claim and notifying claimant of such readjudication in the statement of the case). The Board thus finds that VA's duty to notify has been satisfied through these letters. 

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2016). VA has done everything reasonably possible to assist the Veteran with respect to his claims for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2016). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was also afforded multiple VA examinations in connection with his claimed disabilities that, taken together, are adequate to decide the claims. The examiners indicated that the Veteran's medical history was reviewed and explained the basis for the opinions provided. 

Here, the Board notes that this matter was remanded in March 2016 in order to request certain medical records identified by the Veteran. A June 2016 letter was sent to the Veteran requesting that he submit additional evidence to support his appeal. In response to this request, the Veteran provided VA with a VA Form 21-4142 to request treatment records from Cleveland Clinic, University Hospital, and Naples Hospital. These records were requested. However, VA was only able to obtain the records from University Hospital, which have been associated with the record. A response was received from Cleveland Clinic indicating that that records were not available for the periods specified, and a response was received from Naples Hospital indicating that they do not keep records over 10 years and that the Veteran's records had been destroyed. As such, the Board finds that there has been substantial compliance with the terms of the Board's remand directives. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

The Board finds no indication of any prejudicial VA error in notifying or assisting the Veteran and he has not argued otherwise. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. Applicable Law

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. Service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. Hickson v. West, 12 Vet. App. 247 (1999). 

Service connection may also be granted for listed chronic diseases when the disease is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Under § 3.303(b), an alternative method of establishing the second and/or third elements of service connection for a listed chronic disease is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (38 C.F.R. § 3.303(b) does not apply to any condition that has not been recognized as chronic under 38 C.F.R. § 3.309(a)). In this regard, the Board notes that lay persons may provide evidence of diagnosis and nexus under 38 U.S.C.A. § 1154(a). See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

In addition, service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, reasonable doubt will be resolved in each such issue in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. An appellant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Alemany v. Brown, 9 Vet. App. 518 (1996).

III. Factual Background

The evidence in this case consists of outpatient treatment records, multiple VA examination reports, and statements submitted by the Veteran in connection with his claims.

The Veteran's November 1955 service entrance examination report notes a history of rheumatic fever at age 2, examination of the heart was noted to be negative, and blood pressure was 150/70. In the accompanying medical history, the Veteran indicated he had had rheumatic fever, mumps, whooping cough and cramps in his legs. In a September 1957 record, a history of rheumatic fever and an enlarged heart at 2 years of age was noted. A January 1957 service treatment record reflects complaints of having no energy and of always being tired. The September 1957 separation examination report noted blood pressure of 140/90 and a Grade I systolic apical murmur cleared with exercise. Physical examination showed normal blood pressure and heart percusses, and a soft systolic murmur in the aortic area was noted to change with respiration, position and exercise, and believed to be functional. The impression entered was no cardiac disease. A scar on the nose was noted on both the November 1955 service entrance examination report and the September 1957 separation examination report.

With respect to the Veteran's claim of entitlement to service connection for a heart disorder, post-service treatment records revealed evidence in 2004 of chest pain. Evaluation of the heart showed regular rate and rhythm without evidence of murmur or abnormal sounds. There was no evidence of peripheral edema. Records showed an incidental finding of an abdominal aortic aneurysm. The Veteran was provided an echocardiogram in February 2007 which found normal left ventricular size and function. There was no evidence of pericardial effusion. 

The Veteran was provided a VA musculoskeletal examination in March 2007. Findings on examination showed evidence of weak dorsalis pedis pulses bilaterally. The examiner stated that the Veteran had intermittent claudication of both lower extremities which could be due to vascular insufficiency or spinal stenosis. A VA cardiovascular examination for compensation purposes was provided in August 2007. The examiner indicated that the Veteran's claims file had been reviewed. The Veteran reported chest pain, shortness of breath, and constant fatigue. The examiner noted that the Veteran had arteriosclerotic heart disease and aortic aneurysm as found on chest x-ray. Examination revealed blood pressure of 152/83 with a pulse of 59 which was regular and equal. The chest was clear to auscultation. The heart demonstrated regular rate and rhythm, and there was no evidence of murmurs or extra sounds. The extremities did not show evidence of cyanosis clubbing or edema. EKG testing was normal. Estimated MET level was 3 to 4. Review of records showed that the Veteran had been recently diagnosed with diabetes. Current laboratory studies revealed elevated fasting blood sugars. The VA examiner confirmed the diagnosis of diabetes. In addition to diabetes, the examiner provided a diagnosis of arteriosclerotic cardiovascular disease as found on x-ray. The medical professional concluded that there was no evidence that heart disease had been present in service. In the opinion of the examiner, the Veteran's diabetes mellitus was probably the most significant risk factor for cardiac disease. 

With respect to the claim for hypertension, a review of VA medical evidence indicated treatment of poorly controlled hypertension. In April 2003, the Veteran complained of dizziness with hypertension. Blood pressure readings were 160/100 and 188/104 in June 2003, and VA records indicated continued high blood pressure readings. In March 2007, the Veteran's hypertension was described as refractory. The Veteran denied chest pain, palpitations, and shortness of breath. 

The Veteran was provided a VA compensation examination in February 2007. The examiner noted review of the claims file and provided a diagnosis of essential hypertension. In addition, at the time of the VA heart examination for compensation purposes in August 2007, the Veteran's blood pressure was found to be 152/83. The medical professional confirmed the diagnosis of essential hypertension. 

With respect to the Veteran's claimed bilateral lower extremity pain, evidence dated September 2003 noted the Veteran's complaints of left sided weakness and reports of his knees giving out. The Veteran was noted to ambulate with the use of a cane. The following month, the Veteran reported weakness. 

A VA musculoskeletal examination for compensation purposes was provided in March 2007. The examiner indicated review of the Veteran's claims file. The Veteran reported pains in the right gluteal region and going down the calf, in additional to pain in the knees. Examination indicated that there was no muscular weakness and deep tendon reflexes were 1+. Straight leg raise testing was negative and sensory perception was intact. The knees demonstrated flexion from 0 to 120 degrees bilaterally. The hips performed flexion from 0 to 115 degrees and from 0 to 120 degrees. Abduction was to 45 degrees and adduction to 25 degrees. There was no additional disability with repetition. 

A second examination was provided in August 2007. The medical professional reviewed the Veteran's claims file. The Veteran complained of constant low back pain with radiation to the popliteal regions, weakness in both legs, and stiffness. The Veteran was noted to be service-connected for a lumbar spine disorder. Straight leg raise testing was positive on the right for sciatic type pain, and was negative on the left. Reflexes were 1+ bilaterally. Examination revealed no evidence of muscle weakness. Repetitions did not manifest any additional disability. The examiner assessed the Veteran with radiating pain in the lower extremities originating from the lumbar spine. The medical professional stated that it would speculative to offer an opinion as to whether any chronic joint or muscle disorder was related to service because of a combination of vascular and neurological disorders due to the Veteran's low back condition, and the vascular condition due to the abdominal aortic aneurysm. 

With respect to the Veteran's skin claim, review of the VA medical evidence received noted several skin complaints. A dermatology note in June 2003 showed complaints of rough growths. There were itchy and non-healing. The Veteran was assessed with actinic keratoses and nummular dermatitis. Treatment consisted of topical ointment. Evidence dated February 2004 noted that the Veteran would break out in rashes over the legs, back, and face. Examination revealed no evidence of skin lesions. In April 2004, the Veteran complained of hives due to anxiety. In March 2007, history showed pruritus of the palms and feet. There was flakiness of the face and the sides of the nose. The examiner provided a diagnosis of probable tinea pedis and manus. The Veteran was also diagnosed with onychomycosis. 

A VA compensation examination was provided in February 2007. The medical professional indicated that the Veteran claims file had been reviewed. The Veteran was noted to have a history of dyshidrotic eczema on the hands, actinic keratosis, and seborrheic keratosis. Symptoms included pruritus. Examination showed less than 5 percent of the exposed and total body surface area was affected. There was evidence of scattered crusted papules and small vesicles on the bilateral hands and palms. An erythematosus scaly patch was noted on the right dorsum forea consistent with actinic keratosis. The back revealed multiple scattered pigmented keratoses consistent with seborrheic keratosis. The examiner provided a diagnosis of disydrotic eczema of the hands, actinic keratoses of the right dorsum forea, and seborrheic keratoses of the back. There were no functional limitations present. In the opinion of the medical professional, the Veteran's skin disorders were less likely than not related to military service. 

With respect to the Veteran's claim for abdominal aorta aneurysm, a VA physician's note dated in 2005 noted evidence of a small abdominal aorta aneurysm. The medical evidence showed regular treatment in order to evaluate the size of the aneurysm over time. The evidence in July2007 described the abdominal aorta aneurysm as an incidental finding which was asymptomatic and required no intervention at the time. The abdominal aorta aneurysm was noted on VA heart examination for compensation purposes in August 2007, as well as on compensation examination in February 2007. The examiner confirmed the diagnosis of abdominal aortic aneurysm. The examiner indicated that the condition was being watched very carefully. The medical professional of February 2007 opined that the condition was less likely related to military service. 

Outpatient treatment records from the VAMC Bay Pines covering the period April 2003 to March 2010 denoted treatment for a skin disorder, peripheral vascular disease, erectile dysfunction, neck pain, hypertension, vision loss one eye, and abdominal aneurysm. 

In a June 2010 VA examination, the examiner noted blood pressure at separation was 140/90 and stated that day to day stressors could cause transient elevations in blood pressure, and that hypertension could not be diagnosed based on one reading. Thus, the Veteran's hypertension was less likely as not the same or as a result of the elevated blood pressure found on the separation physical. 

A June 2010 VA skin examination report noted that the Veteran's skin condition was due to chronic sun exposure and was not related to service. 

With respect to service connection for claimed muscle problems, a June 2010 VA orthopedic compensation examination found that "Upon review of these records, it is noticed that what is interpreted as being muscle pains in the lower extremities had to do with vascular insufficiency because of an aortic aneurysm." The physician concluded that the history and symptoms pointed to vascular claudication of both lower extremities that caused cramping and pain in both lower extremities. The physician also mentioned evidence of pain due to the service-connected lumbosacral disorder. The Veteran reported that claudication began about 5 years earlier. 

VA obtained addendum opinions dated in August 2011 and January 2012. The examiners reviewed the claims folder and available medical records noting the Veteran's military and medical history, as well as subjective complaints. The examiners provided opinions as to the etiology of the claimed disabilities. It was opined that it is less likely as not that the disabilities of the legs, hypertension, skin, aortic aneurysm, and chest pain were related to military service. Additionally, it was opined that muscle and joint pains were less likely as not related to a service connected disability of anxiety or the spine. 

An April 2012 VA abdominal aortic aneurism examination report reflected that the examiner dissociated this from active service and from service-connected disabilities on the basis that there was no evidence that the abdominal aortic aneurism had been present in service and no supporting medical literature to indicate a possible link between abdominal aortic aneurism and asbestosis, anxiety, lumbar strain, inguinal hernia, blepharitis, coccydynia, gastroesophageal reflux disease (GERD), or erectile dysfunction. 

Another April 2012 VA examination report dissociated hypertension from active service, noting that only one isolated elevated reading of high blood pressure during active service was insufficient to show that it had had its inception in service. Moreover, the examiner stated, "...a cardiac evaluation during active service concluded that there was no evidence of hypertension or cardiac disease during active duty." The examiner also opined that there was no medical literature supporting a direct cause and effect relationship between any of the Veteran's service-connected disabilities and the development of hypertension. 

An April 2012 VA examination report for skin disorders reflected that the examiner dissociated skin cancers, seborrheic keratoses, actinic keratoses, dishydrotic eczema, and rosacea from active service on the basis that there was no evidence of treatment for any of these conditions in the service treatment records. The examiner dissociated these skin disorders from any service-connected disability on the basis that the medical literature did not support a direct causal relationship between these disabilities and the Veteran's service-connected disabilities. 

An April 2012 VA examination report for arteriosclerotic heart disease reflected that the examiner dissociated arteriosclerotic heart disease from active service on the basis of a documented cardiology evaluation during active service that failed to identify any pathology. The examiner explained that a soft systolic murmur shown at separation was not a disabling condition. Rather, it was a functional murmur that changed with respiration. The examiner also dissociated the post-service arteriosclerotic heart disease from any service-connected disability on the basis that there was no medical literature supporting a direct cause and effect relationship between the Veteran's service-connected disabilities and the development of arteriosclerotic heart disease. 

Because the April 2012 opinions did not address aggravation, the Board remanded the case in February 2013 for a medical opinion addressing aggravation.

An April 2013 VA examination report addressed the etiology of the Veteran's heart disorder, hypertension, skin disorders, and abdominal aortic aneurism. This medical opinion dissociated each of these disorders from active service and also found that no service-connected disability had either caused or aggravated any of the five claimed disorders. The April 2013 examiner, an advanced registered nurse-practitioner, found it unlikely that any service-connected disability had aggravated any of the claimed disabilities because, "The C-file was reviewed and there is no evidence of a cause and effect relationship and/or aggravating factor to any of these claimed conditions to the veteran's service-connected conditions." 

On psychiatric examination in April 2014, the Veteran was diagnosed with unspecified anxiety and depressive disorder. The examiner reviewed the Veteran's records and opined that it was less likely than not that a muscle disorder, a heart condition, hypertension, a skin disorder, or abdominal aortic aneurysm was due to or aggravated by the Veteran's service-connected disabilities, specifically to include anxiety disorder. The rationale for the opinion was that there is no evidence of a cause and effect relationship and or aggravating factors between these conditions and the Veteran's service-connected conditions, to include anxiety disorder. 

On examination in December 2014, the examiner was asked to review the Veteran's records and determine whether his lower extremity pain, hypertension, skin disorder, and abdominal aortic aneurysm were aggravated by any of the Veteran's service-connected disabilities. Following a review of the Veteran's claims file, the examiner determined that the claimed conditions were not aggravated beyond the natural progression by service-connected conditions. The examiner stated that, although hypertension had been refractory, the diastolic blood pressure had been less than 100 during the past 12 months and had not had complication such as CAD or CVA. In addition, muscle pain or claudication due to PVD had not progressed and the last podiatry examination in April 2013 and primary care notes of November 2014 revealed palpable pedal pulses, warm feet skin and pedal hair. With respect to the Veteran's skin disorders, such as seborrheic keratosis, actinic keratosis, dyshidrotic eczema, and rosacea, these were not reported in current treatment notes (November 2014) to have progressed. There were no skin lesions except on the right forehead and a dermatology note dated in August 2013 indicated several skin lesions which were not noted in notes April and November 2014. The examiner also found that there was an increase in the size of the abdominal aortic aneurysm seen in a CT of the abdomen in April 2014, but also found that this increase was a natural progression of the disease. In addition, the Veteran did not report abdominal pain or new leg pains to indicate a leak. In addition, the Veteran's claims file was referred to a VA examiner to determine the etiology of the Veteran's claimed heart disorder. An opinion dated in December 2014 found that the condition claimed was less likely than not (less than 50% probability) incurred in or caused by an in-service injury, event or illness. According to the examiner, the systolic murmur in 1957 was of no clinical significance, as well as the 2007 trivial mitral regurgitation. The trivial MR reported in the echocardiogram was not considered a cardiac diagnosis. The examiner further opined that it was less likely that the trivial mitral regurgitation was caused by or aggravated by any of the Veteran's service-connected disabilities. 

On examination in January 2015, regarding the claimed disability of lower extremity pain (muscle pain or claudication), the examiner found that it was not at least as likely as not (50 percent probability or greater) aggravated by any of the Veteran's service-connected disabilities. The examiner explained that all VA claims files and electronic records were reviewed for the Veteran. After so doing, the examiner found that the Veteran's lower extremity muscle pain/disorder was more likely due to vascular claudication causing pain in his legs, which was noted to be consistent with his past medical history of peripheral vascular disease, HTN, and hyperlipidemia which all can contribute to vascular disease. A lumbosacral sprain with coccydynia would cause pain in the low back and sacrum/coccyx area and generally does not cause muscle pain in the legs. 

The Veteran was afforded additional opinion dated in April 2015. The Veteran's service and post-service medical records were reviewed. The Veteran claimed that his service-connected disabilities, including asbestosis, anxiety reaction, lumbosacral sprain with coccydynia, GERD, hernia, erectile dysfunction, and impaired vision, aggravated his claimed disabilities, including lower extremity pain (muscle pain or claudication), hypertension, skin disorders, and abdominal aorta aneurysm. The examiner found that asbestosis was less likely to have aggravated the Veteran's claimed disabilities because there was no real evidence of asbestosis found in the record. While the Veteran was given this diagnosis, presumably based on history, the examiner stated that the evidence was actually against the diagnosis of asbestosis. The examiner noted that anxiety was known to exacerbate pain, although the examiner did not offer an opinion regarding whether or how much anxiety may have caused or exacerbated pain in the lower extremities. As to the remaining claimed disabilities, the examiner stated that such disabilities were not worsened by anxiety since, based on current medical understanding, that was biologically implausible. The examiner also found that it was not likely that the Veteran's service-connected back disability aggravated his lower extremity pain or other claimed disabilities. In addition, as the examiner found no treatment for GERD or hernia in the past 15 years or so, it was not likely that these conditions aggravated anything. The same opinion was offered for erectile dysfunction and vision disability. In summary, the examiner found that, with the exception of the effect of anxiety on pain, it was not likely that an service-connected disability aggravated the Veteran's nonservice-connected disabilities. And with respect to anxiety, the examiner stated that there was no way to quantify a baseline for anxiety's effect on pain.

An additional April 2015 opinion from the previous examiner was also provided. The examiner clarified that it was his opinion that the Veteran's service-connected disabilities did not aggravate his claimed nonservice-connected disabilities. 


III. Analysis

After considering the evidence of record, the Board concludes that the preponderance of the evidence is against the claims.

As a preliminary matter, the Board notes that the appellant's service treatment records do not document any complaints, treatment, or diagnosis of a disability manifested by lower extremity pain, hypertension, a skin disability, an abdominal aortic aneurysm, or a heart disability other than a Grade I systolic apical murmur cleared with exercise, which a VA examiner has explained is clinically insignificant. Moreover, the service separation medical examination shows that the Veteran underwent further evaluation and military physicians determined that no cardiac disease was present at separation. The Veteran's September 1957 military separation medical examination otherwise indicates that his lower extremities, vascular system, and skin were normal in all pertinent respects. 

In addition, although a blood pressure reading of 140/90 was noted at service separation, for VA rating purposes, "hypertension" means that diastolic blood pressure is predominately 90 mm. or greater; "isolated systolic hypertension" means that the systolic blood pressure is predominately 160 mm. or greater with a diastolic blood pressure of less than 90 mm. See 38 C.F.R. § 4.104, Diagnostic Code 7101, Note 1 (2016). This single elevated blood pressure reading is consistent with the opinions of the VA examiners discussed above to the effect that the Veteran's hypertension was not present during service and that day to day stressors could cause transient elevations in blood pressure, and that hypertension could not be diagnosed based on one reading. Moreover, the examiners have noted that a cardiac evaluation performed during active service showed that there was no evidence of hypertension during active duty. Under these circumstances, the record shows that the Veteran's current bilateral lower extremity disability, hypertension, skin disorder, abdominal aortic aneurysm, and heart condition did not have their inception during active service. 

The record further contains no probative indication that a bilateral lower extremity disability, hypertension, an abdominal aortic aneurysm, or a heart disability was manifest to a compensable degree within one year of separation. The record does not show, nor does the Veteran specifically contend, that such disabilities were manifest to a compensable degree within one year of service separation. 

Moreover, the Board concludes that the most probative evidence shows that the Veteran's current bilateral lower extremity disability, hypertension, skin disabilities, abdominal aortic aneurysm, and heart disability are not causally related to his active service or any incident therein, nor are they causally related to or aggravated by any service-connected disability. As set forth above, multiple VA examiners have examined the Veteran and reviewed the record, including the Veteran's medical history. These examiners have consistently concluded that the Veteran's claimed disabilities did not have their inception during active service or are otherwise causally related to service, nor are these disabilities causally related to or aggravated by any service-connected disability. 

The Board does note that an opinion dated in April 2015 indicated that anxiety may cause an increase in pain in the Veteran lower extremities, that a March 2007 VA examiner indicated that the Veteran had intermittent claudication of the lower extremities which could be due to vascular insufficiency or spinal stenosis, and that an August 2007 VA examiner indicated that the Veteran had radiating pain in the lower extremities originating from the lumbar spine but that it would speculative to offer an opinion as to etiology given the combination of vascular and neurological disorders due to the Veteran's low back and abdominal aortic aneurysm.

The Board has carefully considered this evidence, but finds that its probative value in this case is diminished given the speculative language used by the examiners. It is well established that medical opinions that are speculative, general, or inconclusive in nature do not provide a sufficient basis upon which to support a claim. See e.g. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). For these reasons, the Board assigns this evidence limited probative value and finds that it does not outweigh the more conclusive VA medical opinions discussed above which have consistently concluded that the Veteran's claimed disabilities are not causally related to his active service or causally related to or aggravated by his service-connected disabilities. 

The Board assigns the more definite VA medical opinion evidence great probative weight. These opinions were rendered by qualified medical professional with expertise who examined the appellant, considered his medical history, and reviewed the pertinent medical records and literature. See Bloom v. West, 12 Vet. App. 185, 187 (1999). Moreover, the examiners addressed the Veteran's contentions and the record contains a rationale for the conclusions, which are consistent with the clinical record. There is no probative medical opinion evidence which contradicts these conclusions. 

The Veteran has contended on his own behalf that his claimed disabilities are related to his military service or were caused or aggravated by his service or his service-connected disabilities. In this regard, lay witnesses are competent to provide testimony or statements relating to symptoms or facts that are observable and within the realm of his or her personal knowledge. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir. 2007) (noting that lay testimony may be competent to identify a particular medical condition). Specifically, in Jandreau, 492 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit commented that competence to establish a diagnosis of a condition can exist when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Similarly, the Court has held that when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007).

Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In this case, however, the question of whether the Veteran's claimed disabilities are related to military service or a service-connected disability are complex medical questions that are not subject to lay observation alone. Hence, the opinions of the Veteran in this regard are not competent in this case. Additionally, even though cardiovascular-renal disease, including hypertension, and organic diseases of the nervous system are chronic disease and could serve as an independent basis for an award of service connection if proven, the lay evidence does not establish continuity of symptomatology here. The evidence does not indicate continuity of symptomatology from service in this case and, as such, cannot serve as a basis for service connection. In any event, as set forth above, the most probative evidence establishes that the chronic disabilities claimed by the Veteran were not present during service. 

Questions of competency notwithstanding, although the Board has carefully considered the appellant's lay statements regarding the etiology and onset of his disabilities, it finds that such statements do not outweigh the VA medical opinions discussed above. The examiners' medical training and their objectivity provide more weight to their opinions than that of the Veteran. 

In summary, the Board finds that the most probative evidence shows that a lower extremity disability, hypertension, a skin disability, an abdominal aortic aneurysm, and heart disability not manifest in service or within one year thereafter and are not otherwise causally related to his military service nor are such disabilities causally related to or aggravated by his service-connected disabilities. Under these circumstances, the preponderance of the evidence is against the claims. 38 U.S.C.A. § 5107 (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for a disability manifesting in bilateral lower extremity pain is denied.

Service connection for hypertension is denied.

Service connection for a skin disability is denied.

Service connection for abdominal aortic aneurysm is denied.

Service connection for a heart disorder is denied.





______________________________________________
K. CONNER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs