On consideration of the foregoing and the record on appeal, it is

ORDERED that the motion is denied.

**Rosalie R. BLOOM, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–1463.

United States Court of Veterans Appeals.

Feb. 10, 1999.

Rosalie R. Bloom, pro se.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Michael P. Butler were on pleadings for the appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Rosalie R. Bloom, appeals a May 1997 decision of the Board of Veterans Appeals (BVA or Board). The Board determined that her claim for dependency and indemnity compensation (DIC) was not well grounded because she had failed to submit evidence to show that her husband's death was service connected. The Court has jurisdiction of the case under 38 U.S.C. § 7252. The appellant has filed an informal brief and the Secretary has filed a motion for summary affirmance. For the following reasons, the Court will deny the Secretary's motion but will affirm the decision of the Board.

## I. FACTS

The veteran served on active duty in the U.S. Army from May 1942 to October 1945. The record on appeal did not contain his service medical records but rather contained only a few "morning reports." These morn-

ing reports indicated that the veteran was hospitalized but did not state for what ailment. What is known from the record is that the veteran served in both North Africa and Italy as a crewman operating a light mortar during the Second World War. During a retreat in the Italian campaign, the veteran was wounded, and he and about twenty other soldiers were taken prisoner in September 1943. Subsequently, the veteran was incarcerated in a German prisoner of war camp until rescued in May 1945. As a prisoner of war, the veteran suffered from severe malnutrition and privation. He stated that he was forced to endure long marches, work in hay fields, and perform other manual labor. He recalled one instance when a guard smacked him across the face with a pitchfork, severely injuring his nose. The veteran reported that he frequently experienced vomiting, fever, and chills. He also suffered pain in his muscles and joints and numbness or weakness in his arms and legs. Upon repatriation, he was given a full medical examination, which does not appear in the record.

In September 1986, the veteran completed a questionnaire regarding his experiences in captivity and his current state of health. At that time, the veteran reported, inter alia, high blood pressure, a kidney condition, diabetes, and an arterial condition. The veteran did not report how long he had suffered from these conditions. He did not report a respiratory or malnutrition-caused problem. Later that month, the veteran underwent a psychological examination conducted by Alicia Howard. Ms. Howard reported that while the veteran was not currently service connected, she believed that information provided to her by the veteran "indicates a need for rating evaluation based on long standing and severe health and psychological problems." In November 1986, the veteran was given a psychiatric examination conducted by Dr. Jerome Young. The veteran reported to Dr. Young that he had begun to experience a "nervous stomach" and breathing difficulties in August 1945. Dr. Young noted that he had a history of post-traumatic stress disorder (PTSD), hypertension, and renal failure but did not specify the time of origin for these conditions.

In January 1987, the veteran filed a claim for compensation for "PTSD and any [and] all conditions" for which he was entitled to service connection. He stated that he had experienced intolerance to food since his military service. The veteran submitted with his claim treatment records from 1969 to 1987 which indicated diagnoses of numerous ailments affecting his cardiovascular, renal, and pulmonary systems. These records stated that in 1969 the veteran was treated for hypertension but did not state when this condition originated. These records noted that the veteran was treated previously by Dr. Kenny Arns but do not state for what condition. In 1972, the records indicated that he was treated for a respiratory ailment but again they did not provide an etiology. The veteran was treated for heart and/or lung conditions on many occasions between 1972 and 1984. After a review of the evidence submitted, the VA regional office (VARO) in May 1987 awarded the veteran a 30% disability rating for PTSD but denied the remainder of his claims, finding that they were not related to his military service.

In August 1994, the veteran died. According to the death certificate, his death was caused by pneumonia as a consequence of renal failure. An autopsy performed on the body revealed that he was of "slender build, poorly developed, and poorly nourished." In September 1994, the appellant, as the veteran's surviving spouse, filed a claim for DIC. The VARO denied her claim for DIC on the grounds that his death was not service connected. Subsequently, she appealed this decision to the Board. In her appeal, she claimed that many of the conditions which afflicted her husband in his later years resulted from poor nutrition and privation during captivity. In addition, she submitted a statement from Dr. James T. Smith, the veteran's treating physician, which stated: "Mr. Bloom was a long standing patient of mine who suffered from chronic obstructive lung disease and recurrent episodes of pneumonia, which eventually took his life. In my opinion, his time as a prisoner of war could have precipitated the initial development of his lung condition."

## II. ANALYSIS

■ DIC is paid to the surviving spouse, children, or parents of a qualifying veteran who dies from a service-connected disability. 38 U.S.C. § 1310. For such a death to be considered service connected, it must result from a disability incurred or aggravated in the line of duty. As with any other type of claim, a claimant seeking DIC benefits has the initial burden of showing that the claim is well grounded. 38 U.S.C. § 5107; *see Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993).

■ For a claim to be well grounded, there must be: (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Brown,* 9 Vet.App. 341, 343–44 (1996), *aff'd sub nom. Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997), *cert. denied sub nom. Epps v. West,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998). "[W]here the determinative issue involves medical causation or medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." *Grottveit,* 5 Vet.App. at 93; *see also Heuer v. Brown,* 7 Vet.App. 379, 384 (1995). Whether a claim is well grounded is a question of law which the Court reviews de novo. *See King v. Brown,* 5 Vet.App. 19 (1993).

■ In this case, the appellant's claim is not well grounded because she has failed to submit medical evidence to provide a nexus between any in-service injury and the conditions which contributed to the veteran's death. The veteran died of respiratory and renal conditions. On his POW survey, he listed a kidney condition, diabetes, and a cardiovascular condition, but he never asserted that he developed these problems in the POW camp. The appellant did submit a statement by Dr. Smith stating that in his opinion, the respiratory problems which contributed to the veteran's death "could" have been precipitated by his time in a prisoner of war camp. Dr. Smith did not provide any further support for his conclusion. The Board found that this statement was too speculative to constitute the required nexus. After a careful review of the record on appeal, the Court finds that this statement is insufficient to constitute the medical nexus required in order to well ground her claim. By using the term "could," without supporting clinical data or other rationale, Dr. Smith's opinion simply is too speculative in order to provide the degree of certainty required for medical nexus evidence. *See Sacks v. West,* 11 Vet.App. 314 (1998) (treatise evidence lacks the degree of certainty to provide a medical nexus); *see also Dixon v. Derwinski,* 3 Vet.App. 261 (1992); *Tirpak v. Derwinski,* 2 Vet.App. 609 (1992).

The Court has previously recognized that word parsing in some of our medical nexus cases may have created an unclear picture for ascertaining what constitutes sufficient evidence to satisfy the medical nexus requirement. *See Hicks v. West,* 12 Vet.App. 86 (1998) (comparing the Court's interpretation of language used by medical professionals). But the truth of the matter is that no template is possible that will apply to the almost infinite number of fact situations that can arise. What is speculative in one context might be less so in another. Suffice it to say that in this case, Dr. Smith, as noted above, provided no clinical data or other rationale to support his opinion; nor is there anything otherwise in the record that would give it substance. Dr. Smith's opinion sits by itself, unsupported and unexplained. In other words, his opinion is purely speculative.

## III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand. Summary disposition is not appropriate. *See Frankel v. Derwinski,* 1 Vet.App. 23 (1990).

The Secretary's motion is denied and the decision of the Board is AFFIRMED.