Citation Nr: 1456932 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-28 819 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUE

Entitlement to service connection for a low back disorder.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

J. Schulman, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active service from June 1971 to June 1975. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2008 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Gretna, Louisiana which denied service connection for a low back disorder. The Veteran sought reconsideration of that denial, and in March 2009 his claim was again denied. Since that time, the Veteran has perfected an appeal to the Board, and in December 2013 the Board remanded this matter for additional development. 

The Veteran testified via video conference before the undersigned Veterans Law Judge at a hearing held in June 2013. A transcript of the hearing has been associated with the claims file.


FINDING OF FACT

The Veteran's current degenerative joint disease of the lumbar spine was not incurred in service, and is not otherwise related to service.


CONCLUSION OF LAW

Degenerative joint disease of the lumbar spine disorder was not incurred in service, and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2014). 



REASONS AND BASES FOR FINDING AND CONCLUSION

Service Connection for a Low Back Disorder

The Veteran contends that a current low back disorder is related to his active service. Specifically, he stated, both in testimony before the undersigned and in a June 2013 written statement, that he initially injured his back in August 1973, reinjured it again in May 1975, and that symptoms have continued to worsen over time. He reported that his initial injury was due to moving heavy buckets and large cases of dog food as part of his duties working with military dogs, and his DD-214 confirms that he was a "Patrol Dog Handler" during service.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2014). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1131 (West 2014); see also Degmetich v. Brown, 104 F.3d 1328 (1997). This requirement "is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim." McLain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that evidence of a recent diagnosis of a disability prior to a claim for benefits based on that disability, is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency).

To the extent that the Veteran is claiming service connection for arthritis, the Board recognizes that arthritis is a "chronic disease" which is listed under 38 C.F.R. § 3.309(a); therefore the presumptive provisions of 38 C.F.R. § 3.303(b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. In order to show a "chronic" disease in service, the record must reflect a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Where a chronic disease has been incurred in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required in order to establish entitlement to service connection. 38 C.F.R. § 3.303(b). With regard to any disorders which are not a "chronic disease" listed under 38 C.F.R. § 3.309(a), 38 C.F.R. § 3.303(b) does not apply. Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that the continuity provisions of 38 C.F.R. § 3.303(b) apply only to those disease listed under 38 C.F.R. § 3.309(a)).

Generally, lay evidence is competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). Lay evidence can be competent and sufficient evidence of a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Additionally, a lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. Id. A layperson is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever). See 38 C.F.R. § 3.159(a)(2).

Service treatment records reflect that in January 1972, the Veteran complained of "recurrent midback pain." Radiographic imaging revealed that the lumbar vertebra and intervertebral disc spaces were intact and in anatomical alignment. There was slight scoliosis of the upper thoracic spine with convexity to the left, however the thoracic vertebral bodies and intervertebral disc spaces were intact. In August 1973 the Veteran had stomach cramps and a back ache in the left flank. The Veteran again complained of back pain in December 1973, and in January 1974 he was assessed as having a back ache. In January 1975 the Veteran applied for "cross-training into Munitions Disposal" duty, but was referred for evaluation due to his history of low back pain. In May 1975 the Veteran reported trauma of some kind, to his back on the left side. X-ray imaging was negative, and the assessment was of minor trauma to the right posterior ribs. On report of medical history at separation in June of 1975, the Veteran affirmatively denied any history of recurrent back pain, and on physical examination the spine was normal.

Following separation from service, the Veteran sought to enlist for reserve duty. In his September 1976 report of medical history related to such enlistment, the Veteran endorsed a history of recurrent back pain; there was no associated report of a physical examination. During his July 2012 VA examination he indicated that because he endorsed a history of back pain, he not permitted to enlist as a reservist.

Based on the forgoing, the record reflects that the Veteran had a history of pain in the low back during service, with multiple radiographic examinations being negative for identifiable pathology. On separation the Veteran's spine was normal and he denied low back symptoms. The Veteran and his wife, have both stated that his current symptoms began during service, and have been continuous ever since their onset. The Veteran is competent to report the onset of pain in his back, as this is capable of lay observation. Layno v. Brown, 6 Vet. App. 465 (1994). However, while the Veteran now states that he has been experiencing low back pain since service, this is in direct conflict with his own express denial of such symptoms at separation in 1975. The Board finds the Veteran's 1975 denial of back pain to be more probative than his recollection - three decades later - that he was experiencing back pain. See Curry v. Brown, 7 Vet. App. 59 (1994) (noting that contemporaneous evidence has greater probative value than history as reported by the veteran; affirming Board decision that cited from MCCORMICK ON EVIDENCE (3rd ed.1984) for the proposition that "memory hinges on recency" and that earlier statements are generally more trustworthy than later ones).

Beginning in July 2007 - more than 30 years after separation from active duty - the Veteran complained of a years-long history of low back pain, aggravated by bending, lifting, and pushing/pulling, but without known cause. A social worker's note described the Veteran as applying for "compensation for back related injury which occurred during enlistment," though the context of the note makes clear that the social worker was simply reporting the Veteran's actions, rather than offering an opinion regarding the etiology or onset of any disorder. In a separate July 2007 treatment report, the Veteran reported having "had back pain since before [he] was discharged from the military but it did not prevent [him] from doing [his] normal activity."

Subsequent treatment records confirm arthritic disease processes in the low back, including in March 2012 when radiographic imaging showed degenerative sclerotic changes in lumbar spine. On VA examination in July 2012, the Veteran endorsed having injured his back lifting 80 pound containers of dog food in 1974, though he stated that he did not recall seeking medical attention for his low back until the early 2000s because he was unable to afford to do so. Imaging studies were conducted and confirmed early anterior osteophytic spurring at the L2-L4 levels.

After reviewing the claims file, the examiner opined that "the Veteran's current degenerative joint disease of the lumbar spine is less likely than not incurred in or caused by the claimed in service episodes of low back pain that was treated in service in 1973 and 1974." In arriving at this conclusion, the examiner noted not only the lack of records regarding back pain or treatment, but also the fact that from 2000 to 2007 the Veteran had endorsed "various joint pain including shoulder, knee, and elbow." Finally, she concluded that "the Veteran's medical records fail to validate Veteran is suffering from a chronic back disability which can be traced back to his military service." Silence in a medical record can be weighed against lay testimony if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the medical record. See Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance, J., concurring) (holding that (citing Fed. R. Evid. 803(7)). 

In January 2014 the same VA examiner again reviewed the Veteran's complete claims file, specifically noting the dates of treatment of individual service treatment records. The examiner concluded, again, that the "Veteran's degenerative joint disease of the lumbar spine is less likely than not incurred in or caused by the claimed in service episodes of low back pain that was treated in service in 1973 and 1974." With regard to the Veteran's in-service complaints of pain in the low back region in 1973, the examiner noted that the pain was determined during service to have been referable to a kidney condition and not attributed to a low back disorder. With regard to his 1974 backache, the examiner pointedly called attention to radiographic imaging taken at the time which led to a diagnosis of "muscular back pain," rather than an orthopedic disorder to include degenerative joint disease.

The Board finds the examiner's conclusion that in-service complaints of back pain are unrelated to the currently diagnosed low back arthritis to be highly probative. The conclusion was based on two separate and complete reviews of the record, and the examiner noted the unrelated pathologies which were associated with such complaints before arriving at her final conclusion. See Bloom v. West, 12 Vet. App. 185, 187 (1999) (noting that the value of a physician's statement is dependent, in part, upon the extent to which it reflects "clinical data or other rationale to support his opinion").

In the Board's prior remand, the examiner was instructed to directly "comment on the Veteran's September 1976 report of recurrent back pain on his Air Force Reserve report of medical history." To that end, the examiner "noted [that the] Veteran indicated he had subjective symptoms of recurrent low back pain in 1976, but there was no other information or documentation regarding an ongoing back condition or evaluations of a back condition." Based on the record of in-service treatment, clinical radiographic imaging, and complaints - including the 1976 endorsement - the examiner's final conclusion was that "there is no objective evidence that Veteran had DJD of his lumbar spine while on active service or within a 1 year period after his service period."

A negative nexus opinion based solely on the lack of documentation of treatment for many years after service is of exceedingly low probative value. Here, however, the examiner not only noted the lack of treatment or complaints regarding the low back, but also the fact that the Veteran had sought treatment for other disorder, without mention of low back symptoms. Furthermore, the examiner's overall conclusion was based on consideration not only of this single complaint, but also the Veteran's complete medical history, and consideration of the medical nature of the Veteran's current back disorder as seen no radiographic imaging of the spine.

While competent to report a history of pack pain, see Barr v. Nicholson, 21 Vet. App. 303 (2007), assertions from the Veteran or his spouse that his current low back disorder is related to service are well beyond their lay competence, and thus are of no probative value in establishing a nexus to service. Layno, 6 Vet. App. 465. 

In total, the Board is left with some evidence of in-service symptoms attributed to kidney and muscle pathologies, the Veteran's denial of symptoms at separation from service, his post-service endorsement of such symptoms, non-competent opinions from the Veteran and his spouse regarding a connection to service, and a pair of highly competent and well-reasoned opinions from a physician indicating that the Veteran's current low back disorder was not incurred in service and is not otherwise related to service. The Board has weighed the evidence of record, and finds the preponderance is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). A notice letter was sent to the Veteran in January 2008, prior to the initial adjudication of the claim on appeal. Notice sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). Moreover, in a hearing before the undersigned, the presiding Veterans Law Judge clarified the issue on appeal and identified potentially relevant additional evidence that the Veteran may submit in support of the claim, included evidence of a competent nexus opinion. These actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103. See Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

VA also has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014); see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim").

The Board finds that VA has satisfied its duty to assist by acquiring service records as well as records of VA treatment. These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issues before the Board. The duty to assist was further satisfied by VA examination in July 2012, during which the examiner conducted a physical examination of the Veteran, was provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid a factual foundation for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Furthermore, the Veteran's file was reviewed again by the same VA examiner and a new opinion provided in January 2014. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2014); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claim and no further notice or assistance is required.
 
Finally, in December 2013 the Board remanded this issue for additional development, including the provision of an addendum VA examination opinion. In January 2014 such an opinion was provided, and the claim was readjudicated with the issuance of a supplemental statement of the case in March 2014. Therefore, the Board finds that the RO substantially complied with the December 2013 remand directive, and the Board has properly proceed with the foregoing decision. See Stegall v. West, 11Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).


ORDER

Service connection for a low back disorder is denied.



____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs