Citation Nr: 1722375 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 11-08 415 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Bryan Held, Agent


ATTORNEY FOR THE BOARD

K.C. Spragins, Associate Counsel







INTRODUCTION

The Veteran had active service in the United States Navy from February 1970 to February 1974.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts. The RO in Columbia, South Carolina certified the case to the Board on appeal.

The Board notes that the Veteran requested a videoconference hearing in his March 2011 VA Form 9. However, the Veteran's representative later withdrew this request in a February 2012 statement. Thus, there are no outstanding Board hearing requests.

In an October 2013 decision, the Board remanded the case to the Agency of Original Jurisdiction (AOJ) for additional development and adjudication. The case has since been returned to the Board for appellate review.

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this case should take into consideration the existence of these records.


FINDINGS OF FACT

1. For the entire appeal period, the Veteran has been in receipt of a 60 percent disability rating for one service-connected disability, residuals of a left knee injury with osteoarthritis status post total knee replacement (except for a period of temporary total evaluation from April 11, 2007 to May 30, 2008).

2. Resolving all reasonable doubt in favor of the Veteran, the Veteran was precluded, by reason of his service-connected disabilities, from obtaining and maintaining any form of substantially gainful employment for the entirety of the appeal period.


CONCLUSION OF LAW

For the entirety of the appeal period, the criteria for a TDIU rating have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.1, 4.3, 4.16 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The regulatory scheme for a TDIU provides both objective and subjective criteria. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993); VAOPGCPREC 75-91 (Dec. 27 1991), 57 Fed. Reg. 2317 (1992). The objective criteria, set forth at 38 C.F.R. 
§ 4.16(a), provide for a TDIU when, due to a service-connected disability, a veteran is unable to secure or follow a substantially gainful occupation, and has a single disability rated 60 percent or more, or at least one disability 40 percent or more with additional disability sufficient to bring the combined evaluation to 70 percent. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). In exceptional circumstances, where the veteran does not meet the aforementioned percentage requirements, a total rating may nonetheless be assigned upon a showing that the individual is unable to obtain or retain substantially gainful employment. 38 C.F.R. § 4.16(b).

The Board notes that the Veteran's TDIU claim was raised in the context of his increased rating claims for his left knee and left shoulder disabilities. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). The Veteran's claim was received on May 26, 2009. Thus, the current appeal period began on May 26, 2008, one year prior to the date of receipt of his increased rating claim. 38 C.F.R. § 3.400(o)(2) (2017).

In this case, the Veteran contends that he is unable to secure or follow a substantially gainful occupational as a result of his service-connected disabilities. See June 2009 Veteran's Application for Increased Compensation Based on Individual Unemployability. During the relevant period on appeal, the Veteran's residuals of left knee with osteoarthritis status post total knee replacement was assigned a 100 percent rating prior to June 1, 2008, and a 60 percent rating on and after June 1, 2008. His limitation of left (minor) shoulder motion, due to degenerative arthritis, and his left (minor) distal clavicle resection residuals were both assigned a 20 percent rating. Lastly, his left knee scarring status post arthroplasty and meniscectomy with scarring status post left distal clavicle resection associated with residuals of left knee injury with osteoarthritis status post total knee replacement was assigned a noncompensable rating. The combined disability rating was 100 percent prior to June 1, 2008, and 70 percent on and after June 1, 2008. Thus, the Veteran had one disability rated as 60 percent disabling for the entire appeal period (excluding the period of temporary total evaluation). As such, the Veteran meets the schedular criteria for a TDIU for the entire period on appeal. 38 C.F.R. § 4.16(a).

The Veteran last worked full time in March 2006, and he reported becoming too disabled to work in February 2007. See June 2009 Veteran's Application for Increased Compensation Based on Individual Unemployability. The Veteran completed 1 year of college as well as a 4 year apprenticeship as a painter. He also received training in basic computer skills from June 2005 to July 2006. The Veteran worked full time as a housekeeper/floor technician from May 1995 to January 2000, and as a painter from May 2000 to March 2005. In his work as a painter and floor technician, the Veteran painted apartments; and he waxed, stripped, and mopped floors. See September 2005 Social Security Administration (SSA) Disability Report - Adult. During a typical day, he walked for 2 hours, stood for 2 hours a day, climbed for 4 hours, and sat for 0 hours. He also lifted boxes that weighed between 20 and 25 pounds. The Veteran supervised around 5 other people, but he reportedly spent very little time supervising and did not hire or fire employees. The Veteran did not describe himself as a lead worker. His last fulltime position was as a floor supervisor for a cleaning company from October 2005 to May 2006.

The Veteran later worked for 18 hours a week for a charitable organization from July 2008 to December 2008. Although the organization stated that the Veteran worked as a janitor/cleaner, the Veteran reported that he answered phones. See June 2009 Veteran's Application for Increased Compensation Based on Individual Unemployability; October 2009 VA Form 21-4192. The record also indicates that he worked with a carnival between May and August of 2009. The record reflects that his position with the carnival involved sitting in a chair all day outside a ride to collect tickets. See November 2009 VA treatment record.

Prior to the beginning of the appeal period, a December 2005 Social Security Administration (SSA) record noted that the Veteran had left knee arthritis, and he could not perform any activities that required him to stoop down, ascend stairs, or climb a ladder due to his left knee problems. A January 2006 SSA vocational analysis noted that the Veteran's inability engage in stooping or crouching prohibited him for performing a wide or full range of medium work. The analysis reported that he did not retain the physical capacity for past relevant work. In April 2007, the Veteran underwent a left knee total arthroplasty. 

During the appeal period, a February 2009 VA treatment record noted that the Veteran reported falling the previous day after slipping on ice. His left knee had a previous linear incision that was well-healed with no violation to the skin or tissue. A subsequent April 2009 VA treatment record reported that the fall exacerbated the Veteran's left knee pain. He was status post a left total knee replacement from 2007. The Veteran was also assessed to have chronic pain in his left shoulder. The impression from an associated April 2007 left knee x-ray stated that the Veteran's knee prosthesis was in place without any radiographic evidence of loosening. There was also no evidence of fractures or dislocations. The record noted that the Veteran's left shoulder was limited to 90 degrees of elevation, 80 degrees of external rotation, and 110 degrees of internal rotation. In June 2009, a VA treatment record noted that the Veteran experienced difficulty moving his left arm above 90 degrees. He also had pain and a needle sensation in his left knee. The Veteran was given a bariatric straight cane.

In September 2009, a VA examination related to the Veteran's left shoulder and left knee was conducted. Regarding the Veteran's left knee, the examiner stated that the Veteran denied experiencing any overall functional impairment from the disability. However, he reported difficulty with standing and walking, stating that he could only walk one block before needing to stop due to pain. His knee also stiffened if he sat or stood for more than 15 minutes. The Veteran additionally reported symptoms of weakness, stiffness, swelling, giving way, lack of endurance, tenderness, and constant pain. He also stated that the replacement joint had painful motion and weakness. The Veteran obtained some relief by taking Vicodin and tramadol on a daily basis. The Veteran reported that he had to stop working as a result of his knee replacement surgery. He had been using a cane for his left knee during the past 7 months.
 
In terms of his left shoulder, the Veteran described symptoms of weakness, stiffness, giving way, lack of endurance, tenderness, and constant pain. His left shoulder was aggravated by any left shoulder movement. His associated functional impairment included problems with reaching above his shoulder, especially when he was working as a painter. In his clavicle, the Veteran had symptoms of burning, aching, and oppressive pain that was an 8 out 10 in severity. He reported residuals of decreased left shoulder motion. He denied experiencing any overall functional impairment related to his clavicle. The Veteran described being limited in performing any household and outside physical chores due to pain from his left shoulder and left knee.

A physical examination of the left shoulder and left knee revealed no signs of edema, instability, abnormal movement, effusion, weakness, tenderness, redness, heat, deformity, malalignment, drainage, or subluxation. However, guarding of movement was present in both the left knee and shoulder. Range of motion testing for the left shoulder showed that the Veteran had 90 degrees of flexion, 90 degrees of abduction, 30 degrees of external rotation, and 90 degrees of internal rotation. The left knee had 75 degrees of flexion and 0 degrees of extension. The Veteran was unable to perform stability tests for the left knee due to his total knee replacement. For both the left shoulder and left knee, there was no additional degree of limitation with repetitive use testing. The joint function was not additionally limited by pain, fatigue, weakness, lack of endurance, or incoordination. The examiner commented that range of motion testing for the left knee and left clavicle was qualified as the Veteran put up a lot of resistance to the testing. He also had remarkable motor strength in these extremities. However, the examiner did not report any specific findings for motor strength. 

The Veteran also had a linear scar on his left mid-clavicle that measured 8 centimeters (cm) by 0.5 cm. In addition, he had three linear left knee scars measuring 8 cm by 0.75 cm at the medial left knee, 18 cm by 1 cm at the midline left knee, and 6 cm by 1 cm at the lateral left knee. Each of these scars was superficial with no skin breakdown or underlying tissue damage. The scars were not painful or disfiguring, and they did not limit the Veteran's motion. The examiner concluded that there was no limitation of function due to any of these scars.

The Veteran was provided with another VA examination concerning his left knee in February 2011. The examiner noted that the Veteran experienced constant left knee pain. His knee did not swell, lock, buckle, pop, or grind. The Veteran continued to use a cane on an as needed basis with some relief. He also took Tylenol as needed, but without relief. The examiner reported that the Veteran's activities of daily living were restricted as he was unable to walk for more than 1.5 blocks or stand for more than 1 hour. Prolonged activity for more than 1 hour led to flare ups. These events typically occurred 3 to 4 times a week and lasted for 30 minutes. The Veteran had to avoid weightbearing during flare ups. Upon physical examination, the left knee's motor strength was 5 out of 5. He had 0 degrees of extension and 70 degrees of flexion, with pain accompanying both measurements. There was no loss of range of motion with repetitive use testing. There was also no additional limitation from pain, fatigue, weakness, or lack of endurance following repetitive use. The Veteran's left knee scars were still non-tender and without functional impact. 

Despite the findings discussed above, the examiner stated that the Veteran denied having any joint-related subjected complaints and used no joint-related assistive devices. The examiner also stated that no joint condition affected the Veteran ability to function in his usual occupation or routine daily activities. The Board finds that the examiner's statements are internally inconsistent with the other findings from the examination report that the Veteran used a cane, reported limitations in standing and walking, and had limited range of motion. Consequently, the examiner's opinion provides little probative value in this case.

In October 2011, a VA treatment record noted that the Veteran received a knee brace for his left knee pain. The impression from a subsequent March 2015 left knee x-ray noted that the Veteran's was status post total left knee arthroplasty with no evidence of hardware failure or other complication. No significant interval change was present.

In March 2016, the Veteran underwent VA examinations concerning his service-connected scars, left knee disability, and left shoulder disabilities. Regarding the Veteran's left shoulder and left knee scars, the examiner stated that they were not painful and/or unstable, with frequent loss of covering of skin over the scars. The examiner did not report any related functional impact. In terms of the Veteran's left shoulder, the examiner noted that the Veteran had diagnoses of left shoulder degenerative arthritis and status post left clavicle resection. He experienced limited range of motion and constant, dull pain in his left shoulder. The left shoulder was limited to 100 degrees of flexion, 90 degrees of abduction, 70 degrees of external rotation, and 90 degrees of internal rotation. While pain was noted on the examination, it did not result in/cause functional loss. There was also no additional loss in function or range of motion with repetitive use testing. In addition, no reduction in muscle strength or muscle atrophy was present.

Regarding the Veteran's left knee disability, the examiner noted that the prosthesis from his left total knee replacement was well-positioned and without any infections or loosening. Despite this fact, the Veteran had worsening and almost constant pain. The pain increased if the Veteran stood for a long time. The left knee also stiffened if he sat for too long. He controlled his pain with oxycodone. The Veteran reported that he could only walk for around 100 yards and stand for 15 to 20 minutes. Range of motion testing revealed that the Veteran's flexion was 0 to 90 degrees and his extension was 90 to 0 degrees. The Veteran experienced pain with flexion and upon weightbearing. There was no additional loss in function or range of motion after three repetitions. There was also no reduction in muscle strength or muscle atrophy in the left knee. At the time of the examination, the Veteran regularly used a brace and cane as a normal mode of locomotion.

The examiner determined that both the left knee and left shoulder disabilities impacted the Veteran's ability to perform any type of occupational task. The examiner observed that the Veteran's left knee residuals included being limited to short periods of walking and standing. He was also unable to lift or carry more than 10 to 20 pounds as a result of his left shoulder disabilities. The examiner opined that these functional limitations inhibited the Veteran's ability to perform physical employment, but they did not limit his ability to perform sedentary work. The Board affords this opinion great probative weight as it was based on the examiner's review of the record, clinical data, and other rationale. See Bloom v. West, 12 Vet. App. 185, 187 (1999). 

Following the examination, a July 2016 VA treatment record noted that the Veteran fractured his left shoulder in three places after falling on it. He complained of worsening left shoulder pain. A subsequent July 2016 VA treatment record specified that he sustained a left comminuted proximal humerus fracture. He was instructed to be non-weightbearing in the left upper extremity. He reported having antecedent pain in the left shoulder prior to the fall. The record noted that he had pain with range of motion of the left shoulder. The Veteran's muscle strength was normal (5 out of 5).

In reviewing the evidence of record, the Board finds that the Veteran is entitled to a TDIU for the entire period on appeal. Initially, the Board notes that the Veteran was awarded SSA disability benefits partly based on his impairments from osteoarthrosis and allied disorders. See January 2006 SSA Disability Determination and Transmittal. While not dispositive on the issue of TDIU, the SSA grant of disability compensation constitutes probative evidence in support of the claim with VA for a TDIU. See Collier v. Derwinski, 1 Vet. App. 413, 417 (1991). Although the SSA assessments regarding the Veteran's left knee were completed prior to his total knee arthroplasty, subsequent treatment records and the March 2016 VA examiner's opinion demonstrate that the Veteran continued to experience limitations in employment as a result of his left knee after the April 2007 surgery was conducted.

While the Veteran received some college education and training in basic computer skills, the majority of his employment history involved physical employment. The March 2016 VA medical opinion as well as the other evidence of record reflect that the Veteran is unable to secure or maintain this type of employment as a result of his service-connected disabilities. The Board acknowledges that the Veteran sustained an injury in his left shoulder in July 2016. However, the Veteran's service-connected left shoulder disabilities were of sufficient severity prior to the injury for the March 2016 VA examiner to opine that they inhibited him from performing physical employment. The Board does not find that any additional functional effects that may have resulted from July 2016 injury would impact the probative value of this opinion.

The Board also acknowledges the reports from the record that the Veteran's positions with the charitable organization and the carnival involved sedentary tasks. However, the record reflects that both of these positions were part time and/or short term. Thus, it does not appear that the Veteran has experience in obtaining and maintaining a substantially gainful position in sedentary employment. Moreover, the Veteran stated that in addition to walking and standing, the sitting aspect of his position with the charitable organization was too much for him to handle. See October 2009 Statement in Support of Claim. The Board also notes that despite the March 2016 VA examiner's opinion that the Veteran's left knee would not inhibit his ability to perform sedentary employment, both the September 2009 and March 2016 VA examination reports indicated that a sedentary position would be problematic for the Veteran's left knee disability as the knee stiffened with prolonged sitting. The Board has considered the Veteran's functional capacity and work experience in determining that no type of employment would appear to be appropriate for the Veteran. See 38 C.F.R. §§ 3.341(a), 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The Board also notes that the Veteran appears able to perform certain aspects of daily living. However, the law recognizes that a person may be too disabled to engage in employment although he or she is fairly comfortable at home or upon limited activity. See 38 C.F.R. § 4.10. In addition, a Veteran does not have to prove that he is 100 percent unemployable in order to establish an inability to maintain a substantially gainful occupation, as required for a TDIU award. See 38 C.F.R. § 3.340(a); Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Based on the probative evidence of record, and resolving all benefit of the doubt in the Veteran's favor, the Board finds that the Veteran's service-connected disabilities render him unable to secure or follow a substantially gainful occupation, and a TDIU is warranted for the entire appeal period. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


ORDER

Entitlement to a TDIU is granted.




____________________________________________
Cynthia M. Bruce
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs