﻿Citation Nr: 18106783
Decision Date: 05/31/18 Archive Date: 05/31/18

DOCKET NO. 15-07 438
DATE: May 31, 2018
ORDER
Entitlement to a 70 percent disability rating for posttraumatic stress disorder (PTSD) is granted from April 30, 2008.
Entitlement to a compensable disability rating for traumatic brain injury (TBI) is denied. 
Entitlement to a total disability rating based on individual unemployability (TDIU) is granted from April 30, 2008.
FINDINGS OF FACT
1. Since April 30, 2008, PTSD has caused occupational and social impairment with deficiencies in most areas of the Veteran’s life. 
2. Residuals of TBI have not included any cognitive, emotional/behavioral, or physical symptomatology other than manifestations associated with service-connected PTSD.
3. Since April 30, 2008, the Veteran has been unemployable due to service-connected disability. 
 
CONCLUSIONS OF LAW
1. Since April 30, 2008, the criteria for a 70 percent rating for PTSD have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 4.130, Diagnostic Code 9411 (2017).
2. The criteria for a compensable rating for residuals of TBI have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.124a, Diagnostic Code 8045 (2017).
3. Since April 30, 2008, the criteria for TDIU have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.340, 4.16 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from November 1968 to September 1971. 
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an August 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois. 
Increased Ratings
The Veteran has been service connected for residuals of TBI since September 1971, and has been service connected for PTSD since June 1996. On April 30, 2009, VA received his claims for increased ratings for these disabilities. At that time, PTSD was rated as 30 percent disabling and TBI was rated as 0 percent disabling. In the August 2009 rating decision on appeal, the RO denied his claims. During the pendency of the appeal, the RO awarded increased ratings for PTSD – 50 percent from April 30, 2009, 100 percent under 38 C.F.R. § 4.29 between May 14 and July 1, 2012, and 70 percent from February 25, 2015. The RO also awarded TDIU effective February 25, 2015. The RO has continued the 0 percent rating assigned for TBI. 
The question before the Board concerns the appropriate disability ratings for PTSD and TBI since April 30, 2008, one year prior to his claims for increased rating. See 38 C.F.R. § 3.400(o)(2) (2017). This includes determining whether TDIU has been warranted since then. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). 
Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. “Staged” ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).
The applicable law and regulations concerning effective dates state that, except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110 (a) (2012); 38 C.F.R. § 3.400 (2017). An exception to this rule exists under 38 C.F.R. § 3.400(o)(2). This provision allows VA to assign an effective date for increased rating up to one year prior to the date of claim where medical evidence indicates an increase in disability during that time period. 
In rating disabilities, VA is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence that does so. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). In such cases, the reasonable doubt doctrine dictates that all symptoms be attributed to the service-connected disability. Id. 
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt will be granted to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on the merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).
1. Entitlement to a 70 percent disability rating for PTSD is granted from April 30, 2008.
The Veteran’s PTSD has been rated under Diagnostic Code (DC) 9411 of 38 C.F.R. § 4.130. This DC authorizes compensable ratings of 10, 30, 50, 70, and 100 percent. As the disorder has been rated as at least 30 percent disabling during the appeal period, the Board’s inquiry will focus on whether a 50, 70, or 100 percent rating has been warranted during that time period. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.
Diagnostic Code 9411 and other DCs addressing psychiatric disabilities are addressed under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130. Ratings are assigned according to the manifestation of particular symptoms.
A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty establishing effective work and social relationships. 
A 70 percent disability rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 
A 100 percent rating is warranted for a mental disorder when there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411. 
The “such symptoms as” language of the diagnostic codes for mental disorders in 38 C.F.R. § 4.130 means “for example” and does not represent an exhaustive list of symptoms that must be found before granting the rating of that category. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). 
The evidence dated since April 2008 consists of VA treatment records, the Veteran’s lay assertions, and VA reports and opinions dated in April 2009, June 2009, July 2009, October 2010, April 2013, May 2014, April 2015, October 2015, November 2015, January 2016, and November 2017. Certain of these reports and opinions indicate mild symptoms related to PTSD. For example, the July 2009 VA compensation examination report indicates that the Veteran did not have PTSD, and the April 2015 VA compensation examination report indicates that the Veteran exaggerated his symptoms for monetary gain. This examiner described PTSD symptoms as being in the mild to moderate range. This was also indicated by the examiners who conducted the October 2015 and the January 2016 VA compensation examinations. Nevertheless, the evidence is in a state of relative equipoise regarding the severity of the symptoms. In several detailed letters dated from April 2009 to November 2017 – from the Veteran’s attending VA psychiatrists, psychologists, social workers, and nurses – the Veteran’s PTSD is described as severely disabling. The earliest letter in April 2009, from a treating VA nurse practitioner and psychologist, notes severe symptoms such as “suicidality.” A June 2009 letter, signed by two treating VA psychiatrists and two treating VA psychologists, noted PTSD productive of 
daily bouts of depression-lasting from a couple of hours to all day…. [H]e continues to have two-three nightmares and multiple episodes of flashbacks and intrusive thoughts on a daily basis. Though decreased, he continues to have loud, verbal arguments but has fortunately avoided getting into physical confrontations. His ability to cope with the normal stresses of the interactions of daily living is generally limited to isolating himself from others. 
As detailed further below, this letter also stated that the Veteran’s PTSD symptoms preclude him from being employed. The most recent letter (from a treating psychiatrist) in November 2017 indicates continued severe symptomatology, noting “the full spectrum of PTSD symptoms, especially nightmares, night sweats, intrusive thoughts, reactivity to cues, isolative behavior, disrupted sleep, irritability, hypervigilance, and exaggerated startle responses.” Inasmuch as these opinions are provided by treating medical specialists presumably most familiar with the Veteran’s PTSD, they are of probative value. See Bloom v. West, 12 Vet. App. 185, 187 (1999) (the value of a physician’s statement is dependent, in part, upon the extent to which it reflects clinical data or other rationale to support the opinion). Further, they are persuasive and, at a minimum, put the evidence in a state of relative equipoise regarding the severity of PTSD, and particularly regarding the issue of whether PTSD has caused occupational and social impairment with deficiencies in most areas of the Veteran’s life. See Alemany and Gilbert, both supra. 
Based on the foregoing evidence, a disability rating of 70 percent should apply under DC 9411 of 38 C.F.R. § 4.130. Certain VA evidence tends to indicate milder symptoms but, as indicated, treating VA personnel indicate severe disability. The Board cannot find, therefore, that the preponderance of the evidence demonstrates that a higher rating is not warranted here. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. Further, the 70 percent rating should apply during the entire appeal period – i.e., from one year prior to the April 30, 2009 increased rating claim. See 38 C.F.R. § 3.400(o)(2). 
With regard to the one year period prior to the claim, the Board notes that the record contains no medical evidence dated between April 2008 and April 2009 indicating severe PTSD. However, the higher rating is appropriate during this period because the VA treating psychiatrists and psychologists note a worsening of the Veteran’s symptoms from 2007. Further, in assessing the appropriate effective date for the increase in rating, the Board has considered 38 C.F.R. § 3.344 (2017). This provision guides VA to produce the greatest degree of stability of disability evaluations based on the entire record of examination and the medical-industrial history. Based on such guidance, the Board finds it unlikely that the severity noted in the several reports dated from April 2009 had its onset on that very month. Rather, it is as likely as not that the severity of the Veteran’s PTSD preexisted the claim. This inference is strengthened by the letters from treating personnel. 
A 100 percent rating has not been warranted, however. The evidence does not support a finding that the Veteran’s psychiatric problems have caused total occupational and social impairment. The preponderance of the evidence has indicated that the Veteran’s thought process and communication has been largely unimpaired (see evidence below addressing TBI). Despite evidence of his anger, the evidence indicates that the Veteran has been fully oriented, in control, and coherent throughout the appeal period. The evidence has shown anger and irritability, but not to such an extent that the Veteran has been in persistent danger of hurting himself or others. The evidence shows that he has been able to perform activities of daily living to include personal hygiene requirements. The evidence has generally shown that he has had impaired but intact memory, intact judgment, and the capacity for insight. In short, despite the Veteran’s symptoms, he has not exhibited the type of emotional and cognitive impairment reserved for a total rating. See 38 C.F.R. § 4.130, DC 9440.
In sum, a preponderance of the evidence is not against the assignment of a 70 percent disability rating throughout the appeal period – i.e., from April 30, 2008. However, the preponderance of the evidence is against the assignment of a 100 percent rating at any time during the appeal period. See Alemany and Gilbert, both supra. 

2. Entitlement to a compensable disability rating for TBI is denied. 
Residuals of TBI are evaluated under DC 8045 of 38 C.F.R. § 4.124a (2017). Diagnostic Code 8045 assigns ratings based three main areas of dysfunction: cognitive (which is common in varying degrees after a traumatic brain injury), emotional/behavioral, and physical. The DC states that each area of dysfunction may require evaluation. 
Cognitive impairment is defined as decreased memory, concentration, attention, and executive functions of the brain. Subjective symptoms may be the only residual of a TBI or may be associated with cognitive impairment or other areas of dysfunction. Cognitive impairment, subjective symptoms that are residuals of a TBI (whether or not they are part of cognitive impairment), and emotional/behavioral dysfunction should be evaluated under the table titled “Evaluation of Cognitive Impairment and Other Residuals of a Traumatic Brain Injury Not Otherwise Classified” when there is no diagnosis of a mental disorder. In this case, VA is to evaluate emotional/behavioral dysfunction under 38 C.F.R. § 4.130 as there is a diagnosis of PTSD. 
The “Evaluation of Cognitive Impairment and Other Residuals of a Traumatic Brain Injury Not Otherwise Classified” table contains ten important facets of TBI related to cognitive impairment and subjective symptoms and provides criteria for levels of impairment for each facet, ranging from 0 to 3, and a 5th level labeled “total.” A 100 percent evaluation is assigned if one or more facets are evaluated as “total.” Otherwise, the overall percentage evaluation is assigned based on the level of the highest facet as follows: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. 
The following physical (including neurological) dysfunction shall be evaluated under an appropriate diagnostic code: motor and sensory dysfunction, including pain, of the extremities and face; visual impairment; hearing loss and tinnitus; loss of sense of smell and taste; seizures; gait, coordination, and balance problems; speech and other communication difficulties, including aphasia and related disorders, and dysarthria; neurogenic bladder; neurogenic bowel; cranial nerve dysfunctions; autonomic nerve dysfunctions; and endocrine dysfunctions. Any other physical dysfunction is to be evaluated separately under the most appropriate diagnostic code, as long as the same signs and symptoms are not used to support more than one evaluation. 
VA must separately evaluate any residual with a distinct diagnosis that may be evaluated under another diagnostic code, even if that diagnosis is based on subjective symptoms, rather than under the “Evaluation of Cognitive Impairment and Other Residuals of a Traumatic Brain Injury Not Otherwise Classified” table. There may be an overlap of manifestations of conditions evaluated under the “Evaluation of Cognitive Impairment and Other Residuals of a Traumatic Brain Injury Not Otherwise Classified” table with manifestations of a comorbid mental, neurologic, or other physical disorder that can be separately evaluated under another diagnostic code. In such cases, more than one evaluation based on the same manifestations may not be assigned. If the manifestations of two or more conditions cannot be clearly separated, assign a single evaluation under whichever set of diagnostic criteria allows the better assessment of overall impaired functioning due to both conditions. However, if the manifestations are clearly separable, assign a separate evaluation for each condition. 38 C.F.R. § 4.124a, Diagnostic Code 8045, Note (1). 
Since his April 2009 increased rating claim, the Veteran has undergone VA compensation examinations for TBI in June 2009, April 2013, October 2015, and January 2016. Each of these examiners indicated that the Veteran did not experience residuals of the head injury he suffered during active duty. The June 2009 examiner found the Veteran stable with mild headaches. The examiner noted mild ataxia and mild memory loss due, not to TBI, but to drug and alcohol abuse. The April 2013 examiner described the TBI as “ resolved.” The October 2015 examiner noted the Veteran’s complaint of mild memory loss. But the examiner indicated that the Veteran did not report other subjective symptoms. Further, the examiner indicated the following as normal – judgment, social interaction, orientation, motor activity, neurobehavior, communication, and consciousness. Most recently, in Januayr 2016, the examienr stated that “prefrontal decline” noted in 2015 related not to the in-service injury but to the Veteran’s diabetes mellitus, type 2. 
This evidence indicates that the rating assigned for PTSD contemplates all manifestations of cognitive and emotional/behavioral dysfunction exhibited by the Veteran. See 38 C.F.R. § 4.14 (the evaluation of the same manifestation or disability under different diagnoses is to be avoided); see also 38 C.F.R. § 4.124, Diagnostic Code 8045, Note (1). As there are no remaining manifestations of TBI not already accounted for in the diagnostic criteria for the Veteran’s PTSD, the Board finds the preponderance of the evidence against a finding that there are any clearly separable manifestations of TBI to warrant a separate compensable evaluation. 38 C.F.R. § 4.124a, Diagnostic Code 8045, Note (1). As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable and the claim of entitlement to an increased rating for residual of a TBI must be denied. 38 U.S.C. § 5107(b). 
3. Entitlement to TDIU is granted from April 30, 2008.
The Veteran has been in receipt of TDIU since February 25, 2015. He claims entitlement to an earlier effective date for this rating. This issue has been part and parcel of the increased rating claims for PTSD and TBI addressed here. See Rice, supra. As such, the Board will assess whether TDIU has been warranted since April 30, 2008, one year prior to the Veteran’s claims for increased rating for PTSD and TBI. 38 C.F.R. § 3.400(o)(2). 
It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. 38 C.F.R. § 4.16 (2017). A finding of total disability is appropriate “when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation.” 38 C.F.R. §§ 3.340(a)(1), 4.15 (2017).
Total disability ratings for compensation may be assigned where the schedular rating is less than total when the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).
Effective this decision, the Veteran had been rated as 70 percent disabled for PTSD and 0 percent disabled for TBI between April 30, 2008 and February 25, 2015 (the effective date for the assignment of TDIU). Thus, the threshold percentage requirement for schedular consideration of TDIU has been met since April 30, 2008. 38 C.F.R. § 4.16 (a). The remaining question is whether the evidence indicates that the Veteran has been unemployable due to service-connected disability since then. 
The sole fact that a Veteran is unemployed or has difficulty obtaining employment is not enough to substantiate a TDIU claim. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See Van Hoose v. Brown, 4 Vet. App. 361 (1993). 
As reviewed earlier in discussing PTSD, the evidence dated between April 2008 and February 2015 consists of VA compensation examination reports indicating mild symptoms, and of letters from VA treating personnel indicating severe symptoms. For the reasons discussed earlier, the evidence is in relative equipoise with regard to whether the severity of PTSD has precluded substantially gainful employment. While the compensation examination reports indicate that the Veteran could have worked productively during this period, the treating personnel strongly asserted the opposite. For example, the letter signed by two psychiatrists and two psychologists in June 2009 stated that, 
his problems in dealing with interpersonal relationships will inevitably lead to frequent conflicts with those on the job-whether they are supervisors, coworkers, or clientele. [The Veteran] is seldom free of symptoms of PTSD-which will undoubtedly cause him to withdraw on multiple occasions during a normal work day and will also be likely to have an effect on others at work. It is to be expected that he will have episodes of exacerbation of his PTSD symptoms which are not limited just to anniversary reactions and which will lead to prolonged absences from work when he requires admission to such programs as the Day Hospital Program or to inpatient psychiatric hospitalization. None of this is compatible with being able to hold either part-time or fulltime employment. On the basis of this, I consider [the Veteran] to be totally disabled and would not be able to offer him a job if I were in a position to do so.
These sentiments are echoed repeatedly throughout the appeal period in several letters from treating personnel. Most recently, a treating VA psychiatrist stated in November 2017 : 
These symptoms make him unable to adapt to stressful circumstances and make him unable to establish or maintain effective work and social relationships. In my professional opinion, he is unable to obtain or maintain employment because of these symptoms. It is for this reason that I support [the Veteran’s] claim for individual unemployability due to PTSD. [He] was previously engaged in treatment for PTSD dating back to November, 1993. He was under the care of [Dr. P] from February, 2007 to November, 2010. His PTSD has been well documented in the medical record. In my review of his medical record, I believe it is at least as likely as not that [his] PTSD symptoms have rendered him unable to obtain or maintain employment at least back to June 12, 2009.
With this evidentiary background, the Board cannot find that the Veteran’s unemployability was not due to his PTSD symptoms. Further, the preponderance of the evidence does not demonstrate that, since April 30, 2008, the Veteran has been capable of following a substantially gainful occupation. See Alemany and Gilbert, both supra. As such, the Board finds that the Veteran has been unemployable as the result of service-connected disability since then. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013) (the ultimate TDIU determination rests with VA and not a medical examiner). In assigning this effective date under 38 C.F.R. § 3.400(o)(2), the Board finds it unlikely that the unemployability noted in April 2009 began then. See 38 C.F.R. § 3.344 (2017). The TDIU claim must be allowed from April 30, 2008, therefore. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. To this extent, the Veteran’s claim for an earlier effective date for the grant of a TDIU has been allowed.

 
DONNIE R. HACHEY
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Christopher McEntee, Counsel