Citation Nr: 1730413 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-19 060 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for a heart condition as secondary to service-connected tuberculosis.

2. Entitlement to a rating in excess of 20 percent for service-connected tuberculosis, post-operative with removal of the third and fourth rib and wedge resection of the lobe.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. Henry, Associate Counsel


INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty from December 1950 to November 1952.

This matter comes before the Board of Veterans' Appeals (Board) from a May 2012 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

In his May 2013 Substantive Appeal, the Veteran requested a videoconference hearing. However, in August 2013, he withdrew the hearing request.

In June 2014, September 2015, and May 2016, the Board remanded the case for further development. 

In the September 2015 and May 2016 remands, the Board referred to the Agency of Original Jurisdiction (AOJ) the issues of the Veteran's entitlement to service connection for the following conditions: impairment of the left upper extremity, peripheral vascular disease, diabetes mellitus, and skin cancer. These issues were raised in August 2014 correspondence from nurse C.S. In April 2017, the Appeals Management Center (AMC) referred these issues to the AOJ for adjudication. To date, the AOJ has not adjudicated these issues in the first instance, the Board does not have jurisdiction over them. 

In its September 2015 remand, the Board instructed the RO to identify all residuals of the Veteran's tuberculosis, post-op with removal of the third and fourth rib and wedge resection of the lobe. In April 2017, the RO granted service connection for restrictive lung disease associated with tuberculosis, chondritis; left 4th rib and costal cartilage with extension to the upper left lobe: post op with removal of third and fourth rib and wedge resection of lobe with residual scar-left scapular area to left mid chest anteriorly and assigned a 10 percent rating. The Veteran has not filed a NOD regarding the 10 percent grant. Accordingly, the claim for all residuals of the Veteran's tuberculosis, post-op with removal of the third and fourth rib and wedge resection of the lobe is not now in appellate status before the Board. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.200, 20.201, 20.300, 20.302, 20.1103 (2016).


FINDINGS OF FACT

1. The preponderance of the competent medical and other evidence of record is against a finding the Veteran's heart condition was incurred in or otherwise the result of his active service, or as secondary to a service-connected disability.

2. The Veteran's service-connected tuberculosis, post-operative with removal of the third and fourth rib and wedge resection of the lobe disability features resection of two, the third and fourth, ribs.


CONCLUSIONS OF LAW

1. The criteria for a grant of service connection for a heart disorder, to include as secondary to tuberculosis have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).

2. A rating in excess of 20 percent is not warranted for the Veteran's service-connected tuberculosis, post-operative with removal of the third and fourth rib and wedge resection of the lobe. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.7, 4.20, 4.71a, Diagnostic Code 5297 (2015).







REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

1. The Veterans Claims Assistance Act of 2000 (VCAA)

A. Duty to Notify and Assist

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R. § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate the claim.

Here, the Veteran's December 2011 claim was submitted as a fully developed claim with a Fully Developed Claim Certification executed by the Veteran. The fully developed claim form includes notice to the veteran of what evidence is required to substantiate a claim for service connection and of the veteran's and VA's respective duties for obtaining evidence. The notice also provides information on how VA assigns disability ratings. See VA Form 21-526EZ. Thus, the notice that is part of the claim form submitted by the veteran satisfies the duty to notify.

The Veteran's VA records have been obtained and associated with the claims file. In February and May 2012, October 2015, and January and March 2017, the Veteran was provided with VA examinations. VA's duty to assist with respect to obtaining relevant records and appropriate examinations have been met. 38 C.F.R. § 3.159 (c) (2016); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

B. Stegall Compliance

The Board also finds that there was substantial compliance with the June 2014, September 2015, and May 2016 Board remand directives. Specifically, the Board instructed the AOJ to and the AOJ did secure additional information from the Veteran, obtained pertinent records, afforded the Veteran VA examinations, obtained medical opinions, and readjudicated the claims. On that basis, and in the absence of any allegation on the part of the Veteran as to a lack of remand compliance, the Board finds that substantial compliance with the terms of the prior remands was achieved. See Dyment v. West, 13 Vet. App. 141 (1999); Stegall v. West, 11 Vet. App. 268 (1998). No further development for corrective action is deemed necessary.

For the above reasons, the Board finds the duties to notify and assist have been met, all due process concerns have been satisfied, and the appeal may be considered on the merits at this time.

II. Analysis

A. Service Connection

A veteran is entitled to VA disability compensation if there is a disability resulting from personal injury suffered or disease contracted in the line of duty in active service, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty in active service. 38 U.S.C.A. § 1131. 

Generally, to establish a right to compensation for a present disability, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection means the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). 

Service connection may be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection may also be established for any disability which is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310. In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (citing Gilbert, 1 Vet. App. at 54).

The Veteran contends that his heart condition is caused or aggravated by his service connected tuberculosis. See August 1981 Correspondence and March and July 2015 Appellate Brief.

The Board finds that the first element of secondary service connection has been met, as the medical record contains a current heart diagnosis. 

The second element of secondary service connection requires evidence of a service-connected disability. Here, the Veteran is currently service-connected for tuberculosis. Thus, the Veteran has satisfied the second element of secondary service connection.

The third element of secondary service connection requires medical nexus evidence establishing a connection between the service-connected disability and the current disorder. In this regard, the Board finds that the preponderance of competent and credible evidence weighs against finding that the Veteran's current heart condition was caused or aggravated by his service-connected tuberculosis; therefore, the third element under Wallin is not met.

In August 1981, the Veteran submitted a note dated May 1981 from a physician. The note stated without the protection of his ribs, the Veteran observed his heart palpitating. The Veteran also submitted a lay statement in which he stated the doctors "all say I have a physical defect at my chest wall over my heart, and this cases uneven pressure in my chest." 

In December 2011, the Veteran filed an application for service connection for his heart condition. 

In February 2012, the Veteran was afforded an in-person VA examination. The examiner noted that the Veteran had had surgery and parts of his third and fourth ribs were removed. The Veteran stated that he always felts his heart beating more especially when he was sitting or lying down. The Veteran had recently been diagnosed with a heart murmur. The examiner confirmed the Veteran's mild mitral regurgitation. The examiner stated that the Veteran's heart murmur was not related to or a result of the Veteran's service connected tuberculosis, chondritis, left fourth rib and costal cartilage with extension to the upper left lobe: post op with removal of third and fourth rib and wedge resection of lobe or the residuals of it. The examiner further opined that, as per the medical literature, the Veteran's hearts issues were two distinct/separate conditions with no biomechanical relationship. The examiner concluded that the Veteran's current heart condition was less likely than not proximately due to, aggravated by, or the result of the Veteran's service connected chest wall surgery.

In his May 2013 Substantive Appeal, the Veteran quoting and/or paraphrasing his private physician stated that, due to the pressure pushing on his heart and lungs caused by the deformity over his heart and lungs, he will continue to have an adverse effect on his heart. 

In September 2014, the Veteran submitted multiple lay statements. In a statement dated July 2014, a HLA laboratory supervisor stated that the Veteran had experienced limited physical ability due to altering cardio pulmonary function specifically cardiac muscle fatigue and heart valve stress due to changes in the chest wall structure as a direct results of surgical removal of his ribs. The Veteran's cardiac function showed heart-valve damage potentially due to the lack of compression (over time) provided by normal chest wall architecture and rib structure. The supervisor further stated that the architecture and structure were damaged as a direct result of the tuberculosis and subsequent surgical removal of chest wall tissues and ribs. 

In a statement dated August 2014, a critical care RN, BSN Specializing in Cardiovascular Thoracic Surgery stated that the Veteran's exposure to x-ray and cold weather conditions during military service caused the Veteran to suffer from multiple health issues including heart muscle irritability along with mitral valve regurgitation due to surgical removal of tuberculosis from the chest wall. 

In October 2015, the Veteran submitted echo (transthoracic) results from his physician. The examiner found the Veteran's left and right ventricles and atriums, aortic and tricuspid valves and atrial pressure were all normal. The examiner found mild aortic and mitral and trace pulmonic regurgitation. There was also mild dilation of the aortic root. There was no evidence of aortic stenosis or pericardial effusion. There was abnormal left ventricular diastolic filling consistent with impaired relaxation. 

Also in October 2015, the Veteran underwent another VA examination. The examiner reviewed the Veteran's VA treatment records and other VBMS files and performed an in-person examination. After reviewing the records, the examiner was unable to document a murmur and noted that the Veteran's "claimed heart condition," per VAMC records, was totally asymptomatic. The examiner note that in the Veteran's 2012 ECHO revealed mild mitral valve prolapse. The disorder may be related to a number of different etiologic factors, but none of them related to pulmonary tuberculosis, i.e., pulmonsary tuberculosis is not a risk factor for mitral valve prolapse.

Pursuant to the Board's 2016 remand, in an August 2016 addendum, the examiner stated that the Veteran's heart condition was not caused or aggravated by his service connected tuberculosis, because tuberculosis is not a risk factor for mitral valve prolapse.

In a January 2017 addendum, the examiner stated that it was his opinion that Veteran's Mild Mitral Regurgitation & Mitral Valve Prolapse are less likely than not aggravated or permanently worsened by Veteran's service connected excision of left third and fourth rib cartilage as well as wedge resection of left upper lobe for tuberculosis or its residuals. Excision of left third and fourth rib cartilage & wedge resection of left upper lobe with residuals were not the etiological factors for Mild Mitral Regurgitation & Mitral Valve Prolapse. There were no objective clinical evidence or documentation of aggravation or permanently worsening of Veteran's Mild Mitral Regurgitation & Mitral Valve Prolapse in the available VBMS & Electronic medical records. 

The Board finds the negative evidence outweighs the positive on the issue of secondary service connection. It is to be noted that the Board is not free to substitute its own judgment for as such a medical expert. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). However, the Board is required to assess the credibility and weight to be given to the evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). 

In the July 2014 laboratory supervisor's opinion, the supervisors stated that the Veteran's cardiac function showed heart-valve damage potentially due to the lack of compression provided by normal chest wall architecture and rib structure. Then, the supervisor concluded that the architecture and structure was damaged as a direct result of the tuberculosis and subsequent surgical removal of chest wall tissues and ribs. The Board finds that the use of the language "potentially due to" to be speculative. The Court has held that medical opinions using the "mere speculation" language, without more, generally are disfavored because they are inconclusive as to the origin of a disability. See Warren v. Brown, 6 Vet. App. 4, 6 (1993); Sklar v. Brown, 5 Vet. App. 104, 145-6 (1993). The Court has explained that opinions which contain the "mere speculation" language, without more, amount to 'nonevidence' neither for nor against the claim because service connection may not be based on speculation or remote possibility. See Bloom v. West, 12 Vet. App. 185 (1999) (holding that a medical opinion based on speculation, without supporting clinical data or other rationale, does not provide the required degree of medical certainty). 

Additionally, in support of his service connection claim, the Veteran submitted a statement dated August 2014. In the statement, the critical care RN stated that the Veteran's exposure to x-ray and cold weather conditions during military service caused the Veteran to suffer from multiple health issues including heart muscle irritability along with mitral valve regurgitation due to surgical removal of tuberculosis from the chest wall. However, in an August 2016 VA examination addendum opinion, the examiner, after reviewing the VBMS file and lay statements, stated that there was no documented evidence in the Veteran's medical record of any condition, that might have been caused or aggravated by his exposure to ionizing radiation from multiple x-rays which were taken to assess his service-connected tuberculosis.

The Board finds that the October 2015 physician report does not provide nexus evidence establishing a connection between the service-connected disability and the current disorder.

In contrast, the VA examiners accurately and thoroughly characterized the evidence of record and conducted comprehensive examinations of the Veteran. The VA examiners' reports of the Veteran's medical history and the clinical findings are consistent with the entire body of medical evidence of record. There is no basis on which to find that the VA medical opinions are incomplete or insufficient in any way. The treatment records do not provide contrary evidence. As such, service connection on a secondary basis for a heart murmur is not warranted.

Regarding direct service connection, the Board has carefully considered the duty to resolve reasonable doubt in the Veteran's favor; the record, however, clearly weighs against a finding of a diagnosis of in-service disability or in-service incident that later led to the diagnosis. The Board finds that the Veteran was first diagnosed with a heart condition/murmur in 2012, more than 60 years after his separation from the active duty. The fact that there were no records of any complaints or treatment involving the Veteran's heart condition for many years weighs against the claim. See Maxson v. West, 12 Vet. App. 453, 459 (1999), affirmed sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (it was proper to consider the veteran's entire medical history, including a lengthy period of absence of complaints).

In reaching this decision, the Board has considered the Veteran's arguments in support of his claim. The Board acknowledges that the Veteran is competent, even as a layperson, to attest to factual matters of which he has first-hand knowledge, e.g., observing palpitations in his chest. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that lay evidence is one type of evidence that must be considered, and that competent lay evidence can be sufficient in and of itself. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). The specific issue in this case (whether heart condition/murmur was caused or aggravated by the service-connected disabilities) falls outside the realm of common knowledge of a layperson. See Jandreau, 492 F.3d at 1377 n.4 (laypersons not competent to diagnose cancer). As a layperson, it is not shown that he possesses the medical expertise to provide such an opinion. No competent medical opinions linking his heart condtion to his service-connected disabilities have been presented. The VA examiners considered the Veteran's lay assertions in forming their medical opinions, but ultimately found that the Veteran's current heart condition was not related to his service-connected tuberculosis. Thus, as previously stated, the most persuasive medical evidence of record is against the Veteran's claim. 

The Board notes that under the provisions of 38 U.S.C.A. § 5107 (b), the benefit of the doubt is to be resolved in the claimant's favor in cases where there is an approximate balance of positive and negative evidence in regard to a material issue. The preponderance of the evidence, however, is against the Veteran's claim, and thus that doctrine is not applicable. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran's claim of entitlement to service connection for heart murmur, to include as secondary to the service-connected tuberculosis, is denied.


II. Increased rating claim

Disability evaluations are determined by the application of the Schedule For Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). With regard to the issues at hand, as an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. 

In view of the number of atypical instances, it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21.

The Veteran's rib disability is rated under Code 5297 (for removal of ribs). See 38 C.F.R. § 4.20. A 10 percent rating is warranted for removal of one rib or resection of two or more ribs without regeneration. A 20 percent rating is warranted for removal of two ribs. Under Diagnostic Code 5297, a 30 percent evaluation is warranted for removal of three or four ribs; 40 percent for removal of five or six ribs; and, a 50 percent evaluation for removal of six or more ribs. See 38 C.F.R. § 4.71a, Diagnostic Code 5297 (2016).

Rating factors for a disability of the musculoskeletal system include functional loss due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion, weakness, excess fatigability, and incoordination, pain on movement, swelling, or atrophy. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). In evaluating musculoskeletal disabilities, the VA must determine whether pain could significantly limit functional ability during flare-ups, or when the joints are used repeatedly over a period of time. Id. at 206.

Currently, the Veteran service-connected disability is assigned 20 percent disabling. In his May 2013 Substantive Appeal, the Veteran stated that his disability is more severe than the rating depicts. He stated that a 30 percent rating is more appropriate. In his April 2016 Appellant's Post-Remand Brief, the Veteran contended that he has met the criteria for the next higher rating in that he has had his fourth rib removed. 

During the February 2012 VA examination, the Veteran complained of mild local aching pain and irritation in the left upper chest where the portions of the left third and fourth ribs were removed. The Veteran was not taking any specific medications. The examiner noted that the Veteran had had tuberculosis that had been inactive since 1955. The Veteran had also had an excision of his left third and fourth rib cartilage as well as wedge resection of left upper lobe. There was minimal chest wall defect without medial portions of the third and fourth ribs in the upper left chest. The Veteran had a well-healed scar. There was no evidence of sequestrum or involucrum. The disability did not cause the Veteran any significant effects or problems on his usual daily activities. The examiner diagnosed the Veteran with residuals of a chest. 

In May 2012, the examiner, after reviewing the Veteran's claims file, noted that the Veteran's tuberculosis was inactive. The examiner noted that the Veteran had had two ribs removed, i.e., the third and fourth ribs. The examiner noted that, because of the surgery, the Veteran had flail chest; a 46.5 cm well-healed non-tender scar with no keloid changes. The examiner further noted that there were no acute displaced rib fracture. The Veteran's disability did not impact his ability to work. The examiner confirmed the removal of the Veteran's third and fourth ribs from his left cartilage. 

In March 2017, the Veteran underwent an in-person examination. After reviewing the claims file, the examiner noted that the Veteran had had his third and fourth ribs and costal cartilage removed. The examiner noted that there were no acute displaced rib fracture or active disease in the chest. There were post thoracotomy changes on the left with surgical absence of the left third and fourth ribs. The osseous structures were otherwise intact. The Veteran's disability did not impact his ability to work. The examiner confirmed excision of the third and fourth ribs and wedge resection of the left upper lobe.

Based on the evidence above, the Board finds that the Veteran's excision of his left third and fourth rib cartilage as well as wedge resection of left upper lobe has not approximated the criteria for an increased rating under Diagnostic Code 5297. The evidence of record shows that the Veteran has had two ribs removed, i.e., his third and FOURTH ribs. Under DC 5297, 30 percent rating requires the removal of three or more ribs. During the Veteran's February 2012 VA examination, the Veteran reported mild local aching pain and irritation in the left upper chest where the portions of the left third and fourth ribs were removed. The pain occurred two to three times per day and usually lasted for a few minutes to a few hours. However, the Veteran did not complain of pain in either the May 2012 and March 2017 VA examinations or his treatment records. Additionally, the Veteran was not taking any specific medication for his mild pain. Therefore, the Boards finds that there are no other identified residuals to warrant consideration of other diagnostic codes. 

The Board notes that the Veteran's statements describing his symptoms and condition are competent evidence to the extent that he can describe what he experiences. However, they must be viewed in conjunction with the objective medical evidence and the pertinent rating criteria. Lay evidence is not competent evidence concerning complex medical questions requiring specialized training or expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (Whether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board rather than a legal issue to be addressed by the Veterans' Court.)

For the foregoing reasons, the Board finds that the Veteran's claim for higher rating must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim for higher rating, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for a heart condition as secondary to service-connected tuberculosis is denied.

A rating in excess of 20 percent for tuberculosis, post-operative with removal of the third and fourth rib and wedge resection of the lobe is denied.




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs