﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/31/20

DOCKET NO. 190401-9210
DATE: January 31, 2020

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

REMANDED

Entitlement to service connection for Meniere’s disease is remanded.

Entitlement to service connection for tinnitus, to include as secondary to Meniere’s disease, is remanded.

Entitlement to service connection for residuals of renal cell carcinoma, claimed as due to herbicide agent exposure, is remanded.

Entitlement to service connection for a disability manifested by numbness of the fingertips with uncontrollable shaking, claimed as due to herbicide agent exposure, is remanded.

FINDING OF FACT

Bilateral hearing loss did not have its clinical onset in service and is not otherwise related to active duty; a sensorineural hearing loss was not exhibited within the first post-service year.

CONCLUSION OF LAW

The criteria of entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from December 1965 to December 1968. Service in the Republic of Vietnam is indicated by the record.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from rating decisions dated February 2018 and November 2018 of the Department of Veterans Affairs. The Veteran subsequently elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. §19.2(d)). Specifically, the Veteran submitted a timely VA Form 10182, Notice of Disagreement in April 2019 after the AOJ issued two supplemental statements of the case (SSOC) on March 16, 2019, thereby successfully opting into the new AMA review system. 38 C.F.R. § 19.2(d) (February 19, 2019).

In the April 2019 VA Form 10182, the Veteran requested review of his claims under the Evidence Submission Review lane. Under this lane, the Board reviews evidence of record at the time of the Agency of Original Jurisdiction's (AOJ) decision on the issue or issues on appeal in addition to evidence submitted by the appellant or his or her representative with the notice of disagreement (NOD) or within 90 days following receipt of the VA Form 10182. The Board notes that additional evidence was submitted along with the VA Form 10182.

The February 2018 and November 2018 rating decisions declined to reopen the matters of entitlement to service connection for hearing loss, Meniere’s syndrome, tinnitus, recurrent numbness in the fingertips with uncontrollable shaking, and renal cell carcinoma. In the March 2019 SSOCs, it is unclear whether the AOJ specifically reopened the Veteran’s claims; however, the AOJ did consider all of the Veteran’s claims on the merits. The Board is accordingly bound by this favorable finding. 84 Fed. Reg. 138, 167(Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.104(c)).

1. Entitlement to service connection for bilateral hearing loss.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in active service. 38 C.F.R. § 3.303(d).

To establish entitlement to service connection on a direct basis, the record must contain competent evidence of (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated in service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

If the Veteran engaged in combat with the enemy, and it is claimed that a disease or injury was incurred in such combat, VA shall accept as sufficient proof of service connection satisfactory lay or other evidence of service incurrence, if the lay or other evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d). Even where the combat presumption applies, a veteran must still show that a causal relationship exists between the present disability and the in-service injury or disease. Reeves v. Shinseki, 682 F.3d 988, 999 (Fed. Cir. 2012).

In addition, certain enumerated diseases will be service connected on a presumptive basis if they manifested to a compensable degree within one year after active duty service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). A nexus between the current disability and service may be established by evidence of continuity of symptomatology since service for a listed chronic disability. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013). VA deems sensorineural hearing loss to be an organic disease of the nervous system for purposes of 38 C.F.R. § 3.309(a). See Veterans Benefits Administration (VBA) Fast Letter 10-02 (Mar. 18, 2010); Memorandum, Characterization of High Frequency Sensorineural Hearing Loss, Under Secretary for Health, October 4, 1995. Although the Walker case did not expressly address this issue, the Board will deem sensorineural hearing loss as a “chronic” disease for purposes of this decision.

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

Service connection will be granted for a hearing loss disability where the evidence establishes a nexus between the current hearing loss and a disease or injury suffered while in military service. Godfrey v. Derwinski, 2 Vet. App. 352, 356 (1992). VA regulations do not preclude service connection for a hearing loss which first met VA’s definition of disability after service. Hensley, 5 Vet. App. at 159.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. Gilbert, 1 Vet. App. at 54.

In this matter, the Veteran contends that his bilateral hearing loss began during his active military service. For the reasons set forth below, the Board concludes that service connection is not warranted.

It is undisputed that the Veteran has been found to have current bilateral hearing impairment for VA compensation purposes. See, e.g., the VA examination report dated June 2017.

As indicated above, the Veteran served on active duty from December 1965 to December 1968. His September 1965 enlistment examination documented the following audiometric results:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 (20) 10 (20) 5 (15) 10 (20) 15 (20)

LEFT 5 (20) 5 (15) 10 (20) -5 (5) X 

Note: Prior to November 1, 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In this case, it is unclear whether the thresholds documented on the Veteran’s in-service audiograms were recorded using ASA units or ISO-ANSI units, the Board will assume for the audiogram conducted prior to January 1, 1967, the ASA standard was used. For the audiograms conducted between January 1, 1967 and December 31, 1970, the Board will consider the data under both ASA and ISO-ANSI standards, relying on the unit measurements most favorable to the Veteran’s appeal. The converted results are reported in parentheses.

A November 1967 audiogram documented the following results:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 (20) 10 (20) 0 (10) X 0 (5)

LEFT 5 (20) 15 (25) 10 (20) X 10 (15)

The November 1968 separation examination documented audiometric results are as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 0 (15) 0 (10) 0 (10) X 0 (5)

LEFT 0 (15) 0 (10) 0 (10) X 0 (5)

The Veteran contends that he sustained in-service noise exposure as a result of regular exposure to loud noise due to artillery blasts from serving in a heavy artillery battalion. His service personnel records indicated that his military occupational specialty (MOS) was forward artillery crewman. The Veteran’s service personnel records include an October 1966 Letter of Commendation, which documents the Veteran’s participation in a combat action in September 1966 that included an attack by enemy forces involving heavy fire against the battalion. As such, 38 U.S.C. § 1154(b) is applicable. The Veteran's statements concerning noise exposure and residual audiological symptomatology are competent, credible, and consistent with the circumstances of his combat service; therefore, in-service acoustic trauma and in-service decreased hearing acuity are presumed. 38 U.S.C. § 1154(b); Reeves v. Shinseki, 682 F.3d 988, 998-99 (Fed. Cir. 2012). Thus, the crucial question in this matter is whether such noise exposure resulted in bilateral hearing loss.

Private treatment records dated in October 1995 documented “some left ear hearing loss.” The treatment records noted that, “an audiometric study showed a moderately severe, low frequency left sensorineural hearing loss.” See the private treatment records dated October 1995. Private treatment records dated in October 1996 indicated that the Veteran’s “audiologic evaluation shows a right mild flat sensorineural hearing loss, and a marked left low frequency sensorineural hearing loss.”

Private treatment records dated in March 1999 noted bilateral sensorineural hearing loss, which “is bilaterally worse in the low frequencies and then improved to 2000 hertz before becoming worse once again.”

In a January 2001 letter, Dr. T.B. stated that the Veteran “has a significant history of noise exposure. He served in the Army on active duty for three years with a one-year tour in Vietnam. He was in a heavy artillery battalion and was exposed to artillery blasts from a 175-mm. cannon and an 8-inch cannon.” Dr. T.B. further noted that, when the Veteran returned to Fort Still, he continued to serve in a tank battalion.

The Veteran was afforded a VA audiological examination in June 2017 at which time the VA examiner documented bilateral hearing loss sufficient for VA compensation purposes. See 38 C.F.R. § 3.385. As to the question of nexus, the VA examiner determined that the Veteran’s bilateral hearing loss was not at least as likely as not caused by or a result of his military service. The examiner stated, “[t]he Veteran was in the Army [from] 1965 to 1968 in the artillery. He worked as a truck driver after military separation. He stated that his hearing loss began in service when he walked by an 8-inch gun when it fired.” The examiner also noted that the Veteran “has a diagnosis of Meniere’s [disease], which he said had onset in 1985. He had no report of recreational noise exposure.” The examiner continued,

Hearing was within normal limits in service in all audiograms with no significant hearing threshold shifts suggested to have occurred while on active duty. An Institute of Medicine (IOM) study entitled, ‘Noise and Military Service-Implications for Hearing Loss and Tinnitus’ (2006) concluded that there is not sufficient evidence from longitudinal studies in laboratory animals or humans to determine whether permanent noise-induced hearing loss can develop much later in one’s lifetime, long after the cessation of that noise exposure. Although the definitive studies to address this issue have not been performed, based on the anatomical and physiological data available on the recovery process following noise exposure, it is unlikely that such delayed effects occur. His current hearing loss clearly occurred in years after his military separation and is therefore less likely than not caused by or the result of his military noise exposure.

When assessing the probative value of a medical opinion, the access to claims files and the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). The Court has held that claims file review, as it pertains to obtaining an overview of a claimant’s medical history, is not a requirement for private medical opinions. A medical opinion that contains only data and conclusions is not entitled to any weight. Further a review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion, which is where most of the probative value of a medical opinion comes from. “It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion.” See Nieves-Rodriguez, 22 Vet. App. at 295.

The Board finds the findings of the June 2017 VA examiner were thoroughly explained and fully supported by the evidence of record. The examiner’s opinion was based on a review of the record, including the lay statements, pertinent medical literature, and thoughtful analysis of the Veteran’s entire history. The Board therefore places significant weight on the findings of the June 2017 VA examiner. See Nieves-Rodriguez, 22 Vet. App. at 295 (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion); see also Bloom v. West, 12 Vet. App. 185, 187 (1999) (the probative value of a physician’s statement is dependent, in part, upon the extent to which it reflects “clinical data or other rationale to support his opinion”). Accordingly, the Board finds that the competent medical evidence demonstrating the absence of nexus between the currently diagnosed bilateral hearing loss and the Veteran’s military service outweighs the medical evidence suggestive of a nexus.

The Veteran has not produced a medical opinion to contradict the conclusions set forth in the June 2017 VA medical opinion. Although the January 2001 letter from Dr. T.B. noted the Veteran’s significant history of military noise exposure, Dr. T.B. did not render an opinion linking the etiology of the Veteran’s diagnosed bilateral hearing loss with this conceded noise exposure. Accordingly, the June 2017 VA medical opinion stands unchallenged as competent medical evidence on the crucial question of medical nexus.

The Board has carefully considered the contentions of the Veteran that he suffers bilateral hearing loss, which was incurred during his military service. To this end, the Board recognizes that lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran’s particular disability is the type of disability for which lay evidence is competent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 433, n.4 (2011). In this case, the Veteran’s assertions as to etiology concern an internal medical process, which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Cf. Jandreau, 492 F.3d at 1376 (lay witness capable of diagnosing dislocated shoulder); Barr v. Nicholson, 21 Vet. App. 303, 308-9 (2007); Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (lay person competent to testify to pain and visible flatness of his feet); with Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) (“It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant”); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 (“sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer”). See also Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that in some cases lay testimony “falls short” in proving an issue that requires expert medical knowledge). Questions of competency notwithstanding, the Veteran’s lay theories regarding the etiology of his bilateral hearing loss are contradicted by the conclusion of the June 2017 VA examiner who specifically considered the Veteran’s lay statements in rendering his negative opinion. The Board finds the specific, reasoned opinion of the trained health care provider who conducted provided the June 2017 medical opinion to be of greater probative weight than the more general lay assertions of the Veteran.

The Board has considered that lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent, regardless of the lack of contemporaneous medical evidence. Crucially, however, the Veteran’s contentions in support of service connection, including continuing post-service hearing loss symptomatology are contradicted by the findings of the June 2017 VA examiner who specifically considered the lay assertions and any such inferences contained in the record in rendering the negative nexus opinion.

Considering the overall evidence, including the post-service medical evidence, the VA medical opinion, and the lay evidence presented by the Veteran, the Board finds that the negative evidence is more persuasive and of greater probative value. In conclusion, the preponderance of the evidence is against the Veteran’s claim. Thus, the benefit-of-the-doubt rule is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 54-56.

REASONS FOR REMAND

1. Entitlement to service connection for Meniere’s disease is remanded.

The issue of entitlement to service connection for Meniere’s disease must be remanded to correct a duty to assist error that occurred prior to the March 2019 decision on appeal.

The Veteran is diagnosed with Meniere’s disease, which he contends was incurred during his active duty service. See, e.g., the letter from Dr. T.B. dated January 2001. As indicated above, it is undisputed that the Veteran was exposed to acoustic trauma (namely, the explosion of artillery shells) during service in the Republic of Vietnam. See, e.g., the Letter of Commendation October 1966.

The Veteran has not been afforded a VA medical opinion as to the etiology of his diagnosed Meniere’s disease. Accordingly, this matter must be remanded in order to obtain a VA medical opinion as to the etiology of the diagnosed Meniere’s disease.

2. Entitlement to service connection for tinnitus is remanded.

Tinnitus has been identified as a symptom of the Veteran’s Meniere’s disease. See, e.g., the VA audiological examination report dated June 2017; see also the January 2001 letter from Dr. T.B. dated January 2001. The matter of entitlement to service connection for tinnitus is therefore inextricably intertwined with the matter of entitlement to service connection for Meniere’s disease. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two or more issues are inextricably intertwined if one claim could have significant impact on the other). Therefore, this claim must also be remanded.

3. Entitlement to service connection for residuals of renal cell carcinoma, claimed as due to herbicide exposure, is remanded.

4. Entitlement to service connection for a disability manifested by numbness of fingertips with uncontrollable shaking, claimed as due to herbicide exposure, is remanded.

The issues of entitlement to service connection for residuals of renal cell carcinoma and a disability manifested by numbness of fingertips with uncontrollable shaking must be remanded to correct duty to assist errors that occurred prior to the March 2019 decision on appeal.

The Veteran asserts entitlement to service connection for renal cell carcinoma and a disability manifested by numbness of fingertips with uncontrollable shaking, which he contends are due to exposure to herbicides during his service in the Republic of Vietnam. To this end, the record shows that the Veteran served in the Republic of Vietnam from May 1966 to May 1967, as such his exposure to herbicides is conceded.

Certain diseases listed at 38 C.F.R. § 3.309(e) have been found by VA to be associated with herbicide exposure. The list does not include renal cell carcinoma or numbness/shaking of the fingertips.

Notwithstanding the foregoing, regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange).

In February 1988, the Veteran was diagnosed with right renal cell carcinoma and underwent a right radical nephrectomy. He continues to be regularly monitored for recurrence or mesastasis of his renal cell carcinoma. See, e.g., the private treatment records dated in June 1995 and August 1997; see also VA treatment records dated January 2000.

VA treatment records dated in March 2017 noted that the Veteran has experienced head tremors since 1982 and also has tremors in his hands. He was diagnosed with an essential tremor at that time.

The Veteran was afforded a VA examination in October 2015 at which time the examiner indicated that the Veteran is not diagnosed with a kidney condition. The examiner reported that the Veteran does not suffer from renal failure and has no residuals from his 1988 nephrectomy. The examiner stated that “[T]here is history of renal failure, CRI, or any renal [disease]. [i]t is right nephrectomy is less likely as not related to his prostate cancer. [I]t preceded his prostate cancer.”

In a March 2019 letter, Dr. J.M. stated, “[b]ased on the patient’s history, which is also verified by those closest (his ex-wife) to him these tremors began after returning from the Vietnam War at which time he was exposed to copious amounts of Agent Orange.” Dr. J.M. stated that, as the Veteran has aged, his tremors have increased in intensity. Dr. J.M. noted that the Veteran “also has had renal and prostate cancer, which is also attributed to Agent Orange exposure.” Dr. J.M. then concluded, “[t]he following sequence of events would lead to the clinical evaluation that these tremors are progressively worsening and could in fact be due to exposure to Agent Orange.”

Critically, the March 2019 nexus opinion from Dr. J.M. is admittedly speculative and provides little rationale to support the conclusion rendered. The Veteran has not been afforded a VA examination with medical opinion to address the diagnosis and etiology of his claimed numbness and shaking of the fingertips. Therefore, said claim must be remanded in order to afford the Veteran an appropriate VA examination to address these outstanding questions. Upon remand, a VA medical opinion should also be obtained as to the etiology of the Veteran’s renal cell carcinoma.

Prior to arranging for the Veteran to undergo further VA examination, to ensure that all due process requirements are met, and that the record is complete, the AOJ should undertake appropriate action to obtain all pertinent, outstanding records.

The matters are REMANDED for the following action:

1. Refer the VA claims file to a medical professional with appropriate expertise to provide an opinion as to the diagnosed Meniere’s disease. The examiner is requested to review the claims file in its entirety including all service treatment records, VA, and private treatment records. The examiner should then address the following:

With respect to the diagnosed Meniere’s disease, is it at least as likely as not that the disability had its onset in service or is otherwise the result of a disease or injury in service, to include as due to documented artillery blasts and/or as due to presumed herbicide exposure?

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran’s reports of symptomatology, he or she must provide a reason for doing so.

Should the examiner decide that a physical examination of the Veteran is required, one should be scheduled.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology the claimed disability manifested by recurrent numbness of the fingertips with uncontrollable shaking.

The examiner should either diagnose or rule-out a disability manifested by numbness of the fingertips with uncontrollable shaking, to include the diagnosed essential tremor (referenced above).

The examiner should address whether the Veteran’s disability manifested by recurrent numbness in the fingertips with uncontrollable shaking is it at least as likely as not that the disability had its onset in service, or is otherwise the result of a disease or injury in service, to include as due presumed herbicide exposure?

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran’s reports of symptomatology, he or she must provide a reason for doing so.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

3. Refer the VA claims file to a medical professional with appropriate expertise to provide an opinion as to the diagnosed renal cell carcinoma. The examiner is requested to review the claims file in its entirety including all service treatment records, VA, and private treatment records. The examiner should then address the following:

With respect to the previously diagnosed renal cell carcinoma, is it at least as likely as not that the disability had its onset in service or is otherwise the result of a disease or injury in service, to include legally presumed in-service exposure to herbicides?

Should the examiner decide that a physical examination of the Veteran is required to address these questions, one should be scheduled.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

 

 

K. Conner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. K. Buckley, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.